*In re* BOLIN'S ESTATE *et al.*

TOLBERT v. BOLIN *et al.*

No. 861, Ind. T.    Opinion Filed December 21, 1908.

(98 Pac. 934.)

GUARDIAN AND WARD—Funds of Estate—Rights of Guardian.  A general guardian of the estate of a minor is entitled to the exclusive possession, together with the care and management, of the estate of such minor committed to his trust, which cannot be limited by order of court as to its custody, and where, on annual settlement, the court found the amount due said minor and ordered the same paid by said guardian to the clerk of the court, that part of said order to make such payment is void.

(Syllabus by the Court.)

*Error to the United States Court for the Southern District of the Indian Territory; J. T. Dickerson, Judge.*

In the matter of the estate of Morgan Bolin and others. From an order disallowing certain claims of S. R. Tolbert, guardian, he brings error. Modified and cause remanded.

On October 30, 1905, S. R. Tolbert, as guardian of Morgan Bolin, James E. Bolin, and Joseph Bolin, minors, plaintiff in error, filed in the United States Court for the Indian Territory, Southern District, sitting in probate at Ada, his annual settlement. On March 20, 1906, said guardian filed a supplemental settlement necessitated, "by inadvertence and oversight in failing to show in said report the amount of money he had received for said estates in the years 1904 and 1905, as per inventory filed showing the amount collected for each of said minors." On March 22, 1906, the clerk in probate filed his report passing on these settlements recommending the disallowance of the credit claimed by the guardian in his separate account with Morgan Bolin of the item of $75 as paid George Colbert for 100 acres of land for said minor to file on, $125 claimed by him as fee for filing thereon, $75 claimed by him in "a general way for looking after the minor's estate," for want of law justifying such charges; that he be allowed for expenditures as itemized in said settlement, and stated that this guardian reports amount collected for this ward to be $318.33; that the item of $80 claimed as a credit in his separate account with James E. Bolin as paid Chili Nelson for land to file said minor on, and the item of $125 claimed by said guardian as a fee for filing on said land, and the item of $75 charged by him in a "general way" be disallowed, and that his expenses as itemized be paid, and stated that said guardian reports the amount collected for this ward to be $278.33; that the item of $65 claimed as a credit by said guardian in his separate account with Joseph Bolin as amount paid to Felix Bemis for homestead right on 160 acres for his said ward to file on, and the item of $75 claimed by said guardian as a fee for filing on said land, and the fee of $25 charged by said guardian in "a general way" be disallowed, but that all items charged as expenses be allowed, and stated that said

guardian reports amount collected for this ward to be $255.33, that he has collected in all for these minors $851.99, and that he should be allowed as compensation $85 to be charged *pro rata* to said minors.

On June 22, 1906, said guardian filed in court another supplemental settlement, wherein he expostulates elaborately against the report of the "clerk of probate" in thus disallowing him in all $770, and prayed the court to hear proof in support of said items, none of which were backed by voucher or otherwise. On June 9, 1906, said guardian filed another annual settlement, in which he says he "will now submit the amount of money received and expended by him during the current year past," which he undertakes to do, and which shows a balance due Joseph Bolin on this settlement of $117.20 and James E. Bolin of $115.43, and prays to be allowed "generally for his services," from the estate of Morgan Bolin $40, from the estate of James E. Bolin $30, and from the estate of Joseph Bolin $20. On October 9, 1906, the "clerk in probate" filed his report on all of said settlements, and of the $375.67 for which said guardian asked credit against the estate of Morgan Bolin he recommended $275 thereof be disallowed, and, after giving him credit for certain expenditures and compensation found him to be due said minor $258.73. Of the $399.94 for which said guardian asked credit against the estate of James E. Bolin, he recommended $280 be disallowed, and, after giving him credit for certain expenditures and compensation, found him to be due said minor $229.91. Of the $209.94 claimed by said guardian as a credit against the estate of Joseph Bolin, he recommended $165 be disallowed, and, after giving him credit for certain expenditures and compensation, found him to be due said minor $277.49, and recommended that said guardian be required to pay the same to the court by a day certain, and that he present to said court his resignation as guardian.

The cause coming on to be heard, the court made the following order:

*In re* Bolin's Estate *et al.*

"And now on this 16th day of October, A. D. 1906, came on to be considered the first and second annual settlements and the various supplementals of the guardian herein, and it appearing from said reports that the said guardian has received the sum of $491.83 belonging to the estate of Morgan Bolin, and has disbursed the amount of $233.40 on account of expenses of said estate, which disbursement and expenses are hereby allowed, and it appearing that said guardian has received the sum of $452.16 belonging to the estate of James E. Bolin, and that he has expended the sum of $122.25 on account of said estate, which expenditures are hereby allowed. And it further appearing that said guardian has received the sum of $405.66, belonging to the estate of Joseph Bolin, and that he has expended the sum of $128.17 on account of said estate, which sum of $131.17 is hereby allowed, and the court, being well and sufficiently advised in the premises, doth order that said guardian be charged upon this settlement, and he is hereby directed to pay to the clerk of this court within 15 days from this date the following sums to wit:

To the credit of Morgan Bolin ............................................... $258.43
To the credit of James E. Bolin ............................................... 229.91
To the credit of Joseph Bolin ............................................... 277.49

$765.83"

From which said order said guardian prosecuted his appeal to the Court of Appeals for the Indian Territory, and the same is now before us for review as successor to that court.

*Clinton A. Galbraith* and *Thomas D. McKeown,* for plaintiff in error.

*J. F. McKeel,* for defendants in error.

TURNER, J. (after stating the facts as above). The first error assigned is that the court was without jurisdiction to enter that part of the order requiring plaintiff in error to pay $765.83 to the clerk of the court, and for that reason the same is void. In this we concur. We are of the opinion that that part of the order infringed upon the rights of the guardian to an extent beyond the powers of the court to make, and to that extent is void. The jurisdiction of the courts of probate is not inherent. 9 Enc. Pl.

& Pr. 953. Such courts are purely creatures of statute, with certain limited statutory powers which must be strictly construed. Whenever they exceed the bounds of their statutory power, their acts to that extent are void.

In *Myrick v. Jacks*, 33 Ark. 425, the court, speaking of the powers of these courts, said:

"When they proceed to do a thing which, by proper proceedings and upon a proper case made, they are authorized to do, it will be presumed they have acted correctly; or if the proceedings have been irregular or the conditions of jurisdiction not strictly fulfilled, it is error to be corrected on appeal or certiorari. But if they undertake to make an order not authorized under any circumstances, although they may have jurisdiction over the same property for other purposes, it is void."

Mansf. Dig. § 3485 (Ind. T. Ann. St. 1899, § 2381) provided:

"The guardian of the person, whether natural or legal, shall be entitled to the charge, custody and control of the person of his ward, and the care of his education, support and maintenance. The curator shall have the care and management of the estate of the minor, subject to the superintending control of the court; and the guardian of the person and estate of the minor shall have all the powers and perform all the duties both of a guardian of the person and curator."

Under this statute, as well as at common law, said guardian was entitled to the exclusive possession, together with the care and management of the estates of the minors committed to his charge. Woerner's Am. Law of Guardianship, §§ 53, 54, 55, 61 and 62; *Lee v. Lee*, 55 Ala. 590. As he is not only chargeable with the safekeeping of this money, but with its judicious investment (Mansf. Dig. § 3512 [Ind. T. Ann. St. 1899, § 2408]), it is clear that the effect of this order, if carried out, would be to place it beyond his power to do either, and thus unwarrantably interfere with the faithful discharge of his duties. Besides, having given bond therefor, he was answerable thereon for its ultimate forthcoming, and is, for that reason, if none other, in contempla-

tion of the law, its lawful custodian. That he cannot be deprived of its custody by order of court has been expressly held in determining the rights of a guardian under the Code of Civil Procedure of California, § 1753, providing: "That every guardian appointed shall have the custody and care of the minor and the care and management of his estate. * * *"

*De Greayer v. Superior Court,* 117 Cal. 640, 49 Pac. 983, 59 Am. St. Rep. 220, was certiorari to review an order of the Superior Court of San Francisco. Petitioner, as guardian, by will of the father of the ward and appointment of the court in his petition stated, in effect: That the estate of the father was in course of administration in said court; that said court had ordered distribution of a large sum of money to said ward, which at the time of the order was on deposit by petitioner as executor of the will of the father in a certain trust company; that he was required to give additional bond as guardian, and an order was made transferring said money to his account, as such, on the books of said company, whereupon the court of its own motion, and nothing more, further ordered that said moneys "be held by said California Safe Deposit & Trust Company subject to the order of this (superior) court, and be paid out only as authorized by this court." It was there, as here, contended that this last order was beyond the power of the court to make and was void. In this contention the court concurred and annulled the order, and, referring to the statute quoted, *supra,* in passing, said:

"And the powers there given and the duties imposed are such as in their essential nature are wholly at variance with the existence of the right in the court to take the custody and management of the estate out of the hands of the guardian into its own. Under these provisions, as it was at the common law, it is the guardian, and not the court, who is made responsible for the proper administration of the trust. He it is to whose custody the property of the ward is intrusted, and to whom the law and the ward alike look for its safe return. In the performance of his duties he is, it is true, in certain respects under the control and supervision of the court appointing him; but this right of su-

pervision does not, under our Code, nor did it at the common law, carry the power to interfere in any such manner with the custody and general management of the property of the ward, except, of course, for conduct authorizing suspension or removal."

Under the common law a general guardian was, equally with an administrator or executor, entitled to the care and management of the estate committed to his charge. In *Re Welch,* 110 Cal. 605, 42 Pac. 1089, the court said:

"I know of no law which authorizes a probate judge to direct an administrator where and how he shall keep the assets of an estate, and surely there ought to be no such law. The administrator is liable for their safety on his bond. If the court could lawfully take charge of them, it would deprive interested parties of this security. If goods are lost, it may be a question whether they have been properly cared for. If they have been placed where the judge has directed, and then lost, he will have prejudiced the case before the trial. Administrators cannot be deprived of the actual custody of the assets of the estate by such an order."

We are further constrained to believe that the power to make that part of the order complained of was never intended to be conferred on said court for the reason that the statutes nowhere clothe said court with power to enforce such an order. The only grant of power to said court to make an order upon the guardian to deliver to any one the property in his hands belonging to his ward is contained in Mansf. Dig. § 3534 (Ind. T. Ann. St. 1899, § 2430), which provides:

"The court of probate shall have power to order any property, real or personal, that may come to the possession of a guardian as such, and shall be in his possession at the determination of his guardianship, to be delivered to the person who was his ward, his executor or administrator, and enforce the same by attachment."

As it is not contended that the order complained of was made on final settlement, or that the guardianship was terminated or in any manner sought to be, we are wholly at a loss to know upon what provision of the statute the order was based.

There is another equally cogent reason why this part of

the order is void and should be quashed. It was made without notice to this guardian. Mansf. Dig. § 5201 (Ind. T. Ann. St. 1899, § 3406), provides:

"All judgments, orders, sentences and decrees made, rendered or pronounced by any of the courts of this state against any one without notice, actual or constructive, and all proceedings had under such judgments, orders, sentences or decrees, shall be absolutely null and void."

While it is true that he was chargeable with notice of this proceeding so far as it pertained to the confirmation of his various reports (9 Enc. Pl. & Pr. 957, and cases cited), this guardian was not chargeable with notice that in the same proceeding, it not being a final settlement, the court would order him to pay over the money in his hands.

*Egner, Guardian, v. McGuire, Adm'r.* 7 Ark. 110, was certiorari in the probate court of Independence county. In that case a minor had died leaving his estate in the hands of a guardian. Letters of administration were granted and on motion of the administrator the probate court made an order that the guardian deliver to him all the property in his hands belonging to the estate of his deceased ward. On certiorari the order was quashed for the reason, first, there was no notice to the guardian, and, second it was made before the guardian was required to make final settlement of his guardianship.

*Rightor v. Gray,* 23 Ark. 228, was certiorari to the Supreme Court to quash an order of the probate court of Phillips county. The facts were that William B. Rightor, guardian of the infant heirs of Henry Yerby, deceased, presented his settlement account to that court claiming a balance due him from his wards of $648.40, which account was finally approved. Subsequently, on motion of Rightor, said court made an order requiring Payton B. Gray, his successor as guardian, to pay him said balance. The Supreme Court in passing said:

"But it appearing that the order of January 26, 1860, requiring Gray, the successor of Rightor, to pay over to him the bal-

ance found due him, was made without any notice to Gray, and without his voluntary appearance in the probate court, the circuit court must be instructed to quash that order for irregularity, and remand the cause to the probate court for further proceedings"—which was accordingly done.

It is further contended that the court "erred in passing said order and judgment without allowing or denying plaintiff's claim for services rendered." We presume the "claim" referred to was that filed by the guardian June 22, 1906, expostulating against the disallowance, by the "clerk of probate," in all of $770 alleged to have been paid to certain parties in purchasing lands for his wards to file on and for fees due himself for filing thereon and for fees in a "general way" for looking after the minor's estate. With reference to this claim we think it sufficient to say that the record not only fails to disclose *prima facie* proof thereof (*Merritt v. Wallace,* 76 Ark. 217, 88 S. W. 876), but, on the other hand discloses the affidavit of Chili Nelson taken by the "clerk of probate" before whom the *bona fides* of this claim was under investigation, which discloses that he never sold to said guardian the possessory right to the land set forth in said "claim," and that the alleged payment of $80 therefor by said guardian was never made in whole or in part, and a like affidavit by George Colbert to the effect that, while he did convey the possessory right of certain land to said guardian for said heirs, said guardian never paid anything for it. The record also contains other evidence not necessary to mention, which to our minds was sufficient to justify the court, in effect, in disallowing these claims and proceeding under the statute to allow this guardian such compensation for his services as to the court seemed just and reasonable, pursuant to Mansf. Dig. 3536 (Ind. T. Ann. St. 1899, § 3432). Although the order does not on its face show that any compensation was allowed, yet the record discloses that by said order the court, in effect, confirmed the report of the "clerk of probate" filed October 9, 1906, in which was recommended as allowance for compensation, $45.68 out of the estate of Morgan Bolin, a like amount out of the es-

tate of James E. Bolin, and $43.55 out of the estate of Joseph Bolin. With the exercise of this discretion we see no reason to interfere.

We are therefore of the opinion that the court erred only in making that part of the order complained of directing "the guardian to pay to the clerk of the court the sum of $756.83," and that all of said order should stand except said part which is directed to be set aside, and the cause remanded for further proceedings in accordance with this opinion.

All the Justices concur.