MALLEN et al. v. RUTH OIL CO. et al.

(Circuit Court of Appeals, Eighth Circuit. March 30, 1916.)

No. 4566.

GUARDIAN AND WARD ☞44—LEASE—DURATION.

Under Const. Okl. art. 7, §§ 11–13, and Rev. Laws Okl. 1910, §§ 3330, 3335, 6532, 6554, 6569, which define the probate jurisdiction of the county courts and authorize them to permit the sale and disposal by guardians of the lands owned by minors, without restrictions as to duration of estate, and section 6547, which empowers guardians to lease and grant oil and gas under the same procedure in the county court as now authorized, a guardian can, with the consent of the court, make a lease of the oil and gas under the lands of the minor for so long as those minerals may be found in paying quantities, which will be valid after the ward attains his majority.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 192–201; Dec. Dig. ☞44.]

In Error to the District Court of the United States for the Eastern District of Oklahoma; Ralph E. Campbell, Judge.

Action by William D. Mallen, Jr., a minor, by his next friend, and others, against the Ruth Oil Company and others, to recover possession of a tract of land. Judgment for defendants on demurrer to the petition (230 Fed. 497), and plaintiffs bring error. Affirmed.

Samuel V. O'Hare, of Muskogee, Okl., for plaintiffs in error.

A. J. Biddison, of Tulsa, Okl., and George S. Ramsey, of Muskogee, Okl. (Biddison & Campbell, of Tulsa, Okl., on the brief), for defendants in error.

Before ADAMS, Circuit Judge, and REED and ELLIOTT, District Judges.

ADAMS, Circuit Judge. The plaintiffs in error, who are the heirs at law of one Jesse D. Mallen, deceased, brought this action in the District Court of the United States for the Eastern District of Oklahoma to recover possession of a certain described tract of land located in the county of Nowata, in the state of Oklahoma. They alleged in their petition that on April 7, 1912, William Mallen, who before then had been duly appointed by the county court of Nowata county legal guardian of Jesse D. Mallen, who was then a minor, executed an oil and gas lease to the defendant, Ruth Oil Company, which was duly approved by the county court of Nowata county, whereby he demised, for a consideration specified, to the lessee all the oil and gas in and under the land, "for the term of minority of said minor, and so long thereafter as oil or gas is found on said premises in paying quantities"; that Jesse D. Mallen, had he lived, would have reached the age of 21 years on September 1, 1913; that the term of the lease executed by his guardian therefore expired, by limitation, on that date; that the county court of Nowata county had no jurisdiction or power to authorize the guardian to execute a lease of his ward's land for oil and gas mining purposes for a term extending beyond the minority of the

ward; and that the plaintiffs, as the heirs at law of the deceased minor, were entitled to the possession of the demised premises and a judgment for rents, incomes and profits accruing since the 1st day of September, 1913.

To this petition the defendants demurred, alleging that it failed to state a cause of action. This demurrer was sustained, and, the plaintiffs declining to plead further, judgment was rendered for the defendants, for the reversal of which plaintiffs prosecute this writ of error.

The sole question raised by the assignment of error is this: Is an oil and gas mining lease, executed by a guardian of a minor in the state of Oklahoma under the authority and direction of the county court, containing this habendum clause, "To have and to hold the above-described premises for the term of minority of said minor, and so long thereafter as oil or gas is found on said premises in paying quantities," a valid lease in so far as its term extends beyond the minority of the ward?

Although the ward was an Indian, the question is not embarrassed by any Indian statute, or law specially applicable to Indians, but is one of general law, and is to be considered accordingly. It is well settled by the authorities, and so conceded by counsel, that a lease of that kind as between parties sui juris is valid for the term as stated, namely, "so long thereafter as oil or gas is found on said premises in paying quantities"; but the plaintiffs in error contend that this rule does not prevail in leases executed by a guardian in right of his ward, that such leases are valid as conveyances for the term of minority only, and voidable thereafter. Defendants in error, on the contrary, contend that such leases are valid conveyances for the full term "so long thereafter as oil or gas is found on said premises in paying quantities." Which is right?

Section 11 of article 7 of the Constitution of Oklahoma provides for the establishment of a county court in each county of the state, and that it shall be a court of record; and section 12 of that article provides that the county court shall have original jurisdiction coextensive with the county in all probate matters. Section 13 of that article is as follows:

"The county court shall have the general jurisdiction of a probate court. It shall probate wills, appoint guardians of minors, idiots, lunatics, persons non compos mentis, and common drunkards; grant letters testamentary and of administration, settle accounts of executors, administrators, and guardians; transact all business appertaining to the estates of deceased persons, *minors*, idiots, lunatics, persons non compos mentis, and common drunkards, including *the sale*, settlement, partition, and distribution of the estates thereof."

The relevant statutes of the state are as follows:

Section 3330 (Revised Laws of Oklahoma 1910) provides that:

"In all cases the court making the appointment of a guardian has exclusive jurisdiction to control him in the management and disposition of the person and property of his ward."

Section 3335 is as follows:

"A guardian of the property must keep safely the property of his ward. He must not permit any unnecessary waste or destruction of the real property,

nor make any *sale* of such property without the order of the county court. * * * "

Section 6532 requires that the guardian, before the issuance of letters of guardianship to him, shall execute a bond with sufficient sureties, conditioned that he will make an inventory of all the estate, real and personal, of his ward, *dispose of* and manage the estate according to law and for the best interest of his ward, faithfully discharge his trust in relation thereto, and render an account, on oath, of the property, estate, and moneys of the ward in his hands, and all proceeds or interests derived therefrom, and of the management *and disposition* of the same.

Section 6554 is as follows:

"When it appears to the satisfaction of the court, upon the petition of the guardian, that *for the benefit* of his ward *his real* or personal estate, or some part thereof, *should be sold*, and the proceeds thereof put out at interest, or invested in some productive stock, or in the improvement or security of any other real estate of the ward, his guardian *may sell* the same for such purpose, upon obtaining an order therefor."

Section 6569 is as follows:

"The county court, on the application of a guardian or any person interested in the estate of any ward, after such notice to persons interested therein as the judge shall direct, may authorize and require the guardian to invest the proceeds of sales, and any other of his ward's money in his hands, in real estate, or in any other manner most to the interest of all concerned therein; and the county court may make such other orders and give such directions as are needful for the management, investment and disposition of the estate and effects, as circumstances require."

The foregoing constitutional and statutory provisions (other than section 6547, to which attention will be given later) disclose, in our opinion, that the organic law of the state and many legislative enactments in harmony therewith, confer upon the county court of the state very general and comprehensive supervision over the "management," "control," "sale," and "disposition" of the estates of minors under guardianship. They confer upon such courts, among other specific provisions, jurisdiction: (1) To appoint guardians for minors; (2) to transact all business appertaining to their estates; and (3) to control the guardian in the management, control and disposition of the property of his ward; and they specifically confer upon guardians of a minor the right to petition the county court for leave to sell his real estate and reinvest the proceeds of such sale whenever it shall be made to appear to the court that such sale would be for the benefit of his ward, and in express terms confer upon the court power to make such an order upon the petition of the guardian, making a showing of that kind, and require the guardian to file a bond, conditioned for the faithful discharge of his duties, including rendering an account for all moneys coming into his hands or interest derived from the management and disposition of his ward's property, and in express terms confer upon county courts the power to make such other orders and give such directions as are needful for the management, investment, and disposition of the estate and effects, as circumstances require.

These provisions would seem, on a proper and harmonious consideration of them all taken together, if not, indeed, upon the consideration of several of them severally and independently, to afford ample authority for the sale or other disposition by the guardian, when authorized by the appropriate county court, of any and all property, whether real or personal, belonging to the ward, whenever such sale or other disposition would be beneficial to his ward's estate, or whenever, in view of all the circumstances surrounding the case, the best interests of his estate would require. And this authority does not appear to be limited in any manner, either as to quantity or duration of the estate sold or disposed of. They have empowered the guardian to make such sale or disposition of the ward's property "as circumstances require," "for the best interests of the ward," etc. In neither the Constitution nor statutes is there any suggestion of a sale or disposition for and during the time of minority only suggested, but in all the provisions authorizing the sale or disposition of the ward's property general and comprehensive language is used without any limitation whatsoever as to the quantity of the estate to be sold or disposed of. In fact, the general language authorizing the sale and disposition of the ward's property would most naturally include authority to sell or otherwise dispose of any portion or all of it, especially as no limitation is expressed or suggested.

But this is not all: In recent years a peculiar kind of property was discovered and developed in many parts of the state of Oklahoma, consisting of oil and gas, which has become notoriously valuable. This kind of property, as disclosed by the judicial history of its development in this and other courts (see Kemmerer v. Midland Oil & Drilling Co., 229 Fed. 872, —— C. C. A. ——, and cases cited), is fugitive in its character and liable to seepage and in other ways to be drained away from its original location to parts of contiguous or neighboring land. As was said by the learned District Judge who tried this case, and who, by reason of his proximity to and familiarity with the property now involved, is specially qualified to speak on the subject:

"It is a matter of common knowledge that in the development of the oil business new territory is constantly being proven. When a paying well is brought in in new territory, the rush for leases is very like the rush for claims in a new mining camp. Frequently the largest bonuses and the best terms are procured during the first flush of the excitement. But suppose that in such a case the ward's land is in the midst of the most desirable territory, but he is say 19 or 20 years old, so that, if the court and the guardian may not make and approve a lease beyond his minority, its term can only be 1 or 2 years as the case may be. His neighbors adjoining may lease for 10, 15, or 20 years, and so much longer as oil and gas may be found in paying quantities. It is obvious that the purchasers of such leases would give vastly more for the long-term leases than the one running only for 1 or 2 years. It might reasonably happen that this handicap against the leasing of the ward's land would make it impossible to effect any lease at all, and that immediate development on adjoining tracts would result in serious drainage of the land, which, during a year or two, might practically ruin it as an oil and gas property and thus divest it of the greatest element of value it contains, and leave to the ward, when he reaches majority, the mere shell. Now, in a case of this kind, a most important feature of business appertaining to the estate of the ward is the disposition of his land for oil and gas purposes to the very best advantage. The ward, by reason of his disability of minority, cannot act. It is for this reason that the county court is authorized to act for him."

Moreover, Congress, by section 2 of the act of May 27, 1908 (35 Stat. 312, c. 199), has provided that leases for oil, gas, or other mining purposes may be made with the approval of the Secretary of the Interior, thereby, as said by this court in Kemmerer v. Midland Oil & Drilling Co., supra, making a "severance of the oil and gas right from the surface, * * *" recognizing the existence of an estate therein, separate and distinct from the surface of the land, and making provision for its separate disposition. It does not seem reasonable to curtail the right of free and unrestricted alienation of this peculiar kind of property by or on behalf of an infant, when it is freely admitted to adults. This would place the infant and his property at considerable disadvantage in the sharp competition with respect to such property.

In view of the peculiar character and quality of the property in oil and gas, as just indicated, the Legislature of the state of Oklahoma was not content to leave it, when belonging to minors, subject to the disposition or control of county courts under any general laws or to be determined by construction or intendment, but has made specific provision concerning it, in section 6547 Revised Laws of Oklahoma 1910, which reads as follows:

"Guardians of infants and insane persons are hereby empowered to lease and grant mineral oil and mineral gas, in consideration of a royalty or part or portion of the production thereof, and under the same procedure in the county court as now provided by law, where such consideration is money."

This section seems to us to afford explicit authority for the leasing of oil and gas lands belonging to minors by guardians of such minors, when authorized so to do by the appropriate county court. It is noticeable that this section makes no limitation upon terms during which such leases may be made. This seems to be controlled by other provisions of the statutes, to which reference has already been made, which, among other things, empowers the guardians to make such sales and dispositions of the property of the ward as under all the circumstances the best interests of the ward may require. The determination of what the best interests of the ward requires is left to be determined by the county court, upon such hearing as is appropriate in such cases.

Manifestly, for reasons stated by the learned District Judge, terms of considerable duration would be justified, and in many cases imperatively demanded, if the interests of the ward were alone to be considered.

To enforce the rule contended for by the plaintiffs in error in this case, that a guardian of a minor has no power to lease oil or gas properties for terms extending beyond the minority of the minor, might in many cases deprive the ward of the substantial advantage of the ownership by him of land bearing oil and gas. It may be, on account of its fugitive character, entirely dissipated or drained from his land before he reaches the age of majority, or it may be, as suggested by the District Judge, impracticable to make leases for the short period of minority only.

The Supreme Court of Arkansas which, by reason of the fact that
231 F.—54

the laws of that state governed many of the rights of citizens of the Indian Territory before statehood, in the case of Beauchamp v. Bertig, 90 Ark. 350, 370, 371, 119 S. W. 75, 23 L. R. A. (N. S.) 659, had occasion to give consideration to the questions involved in this suit, employed the 'following language:

"Our statute empowers the probate court, upon being satisfied that it would be for the best interest of the estate of a minor, to make an order authorizing the guardian to rent the lands of such minor publicly or privately, as in his judgment shall be best for the interest of his ward, subject to the approval of the probate court, or the judge thereof in vacation. Sections 3789, 3790, Kirby's Digest. It also gives the probate court power to sell or lease for purposes of reinvestment or putting proceeds on interest. Section 3801, Kirby's Digest. * * * Under the common law, or statutes simply declaratory thereof, leases made by the guardian to extend beyond the term of the guardianship are voidable [citing cases]. * * * But the supreme lawmaking power in our state has by the above statutes invested the probate court with power to sell and lease the lands of infants. The matter is left in the judgment of the probate court, and there are no limitations prescribed for the term of lease, and we are of the opinion, from the above and cognate provisions of chapter 76, Kirby's Digest, that none were intended. The best interest of the estate of the minor is the prime and only consideration, and that seems to be the only limit to his discretion within the statutory provisions. Complying with these, the intention of the lawmakers was to give the probate courts plenary power in the premises. Hence the lease made by order of the court was valid, although it was to continue beyond the minority of the infants."

In the case of Huston v. Cobleigh, 29 Okl. 793, 119 Pac. 416, the Supreme Court of Oklahoma had before it the validity of an oil and gas mining lease executed before statehood by a guardian, and extending beyond the minority of his ward. It was there said by Mr. Justice Williams, in delivering the opinion of the court:

"It is contended by counsel for plaintiffs in error that said court [the United States court] was sitting in the exercise of probate jurisdiction only. If so, certain acts as contained in Mansfield's Digest of the Statutes of Arkansas (1884), apply. Such statutes then in force in the Indian Territory are as follows: Mansfield's Digest, section 3502 (section 2398, Ind. Ter. Stat. 1899), empowered the United States Courts in the Indian Territory, sitting as probate courts, to authorize the guardian to lease the lands of a minor according to the best interests of the ward, subject to the approval of the court; and sections 3509, 3510, and 3511, Mansfield's Digest, * * * authorize the probate court to sell and lease for purposes of reinvestment or putting proceeds on interest."

The court then cites, with approval, the case of Beauchamp v. Bertig, supra, reviews certain sections of Kirby's Digest, finds the same to be identical with the sections of Mansfield's Digest in force in the Indian Territory, and then says:

"The statutes in force in the Indian Territory were fully as comprehensive in empowering the guardian, with the permission of the court, to execute a lease to extend beyond the minority of the minor, as those of Arkansas at the time of the delivery of the opinion in Beauchamp v. Bertig, supra, which was on April 26, 1909."

In Cowles v. Lee, 35 Okl. 159, 128 Pac. 688, the same question which was involved in Huston v. Cobleigh was again before the Supreme Court of Oklahoma, and that court then held that under the Arkansas statutes the United States courts, sitting as courts of probate, had power to approve oil and gas mining leases extending beyond the

minority of a ward. See, also, Cabin Valley Mining Co. v. Mary Hall (Okl.) 155 Pac. 570, just decided by Supreme Court of Oklahoma, opinion handed down February 15, 1916.

We think the language and necessary intendment of the provisions of the Constitution and statutes of Oklahoma, taken singly or all together, make it clear that a guardian's lease, made with the approval of the county court, demising oil and gas land of his ward for a term extending beyond his minority, and even "so long thereafter as oil or gas is found on said premises in paying quantities," is valid; and this conclusion appears to be the view of the Supreme Courts of the states of Arkansas and Oklahoma, as disclosed, in effect, by their decisions supra.

The judgment of the District Court is affirmed.