## HADDOCK v. BRONAUGH et al.

No. 11317—Opinion Filed Sept. 25, 1923.

1. **Guardian and Ward—Jurisdiction of County Court—Lease of Lands For Agricultural Purposes Beyond Minority of Ward.**

Under the Constitution and statutes of Oklahoma, a county court has no jurisdiction to approve a guardian's lease of the ward's lands for agricultural purposes for a term beyond the minority of the ward.

2. **Same—Partial Validity of Lease.**

A guardian's lease of lands of his ward for agricultural purposes, the term of which extends beyond the date of the majority of the ward, is void as to the excess of the term thereof after said ward reaches majority.

3. **Judgment—Collateral Attack—Order of County Court Leasing Minor's Land.**

Where plaintiff brought ejectment, basing his right to the possession of the lands upon lease for agricultural purposes executed by the owner after obtaining majority, and defendant based his right to possession of such lands for the year after ward obtained majority upon guardian's lease for a term extending beyond the minority of ward, such lease being duly approved by the county court, held, that such suit was not a collateral attack upon the order of such county court approving such lease, such order being void as to the excess of the term of such lease beyond the minority of. the ward.

(Syllabus by Estes, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, McClain County; F. B. Swank, Judge.

Ejectment and for damages for withholding possession of real estate and to cancel guardian's lease thereon. From judgment for defendants, plaintiff brings error. Reversed.

Ledbetter, Furman & Ledbetter, for plaintiff in error.

J. B. Dudley, for defendants in error.

Opinion by ESTES, C. Plaintiff in error, as plaintiff, sued defendants in error, V. Bronaugh et al., as defendants in the district court to recover possession of agricultural lands, and for damages for withholding same and for cancellation of guardian's lease. Lucinda Davis, nee Amos, a Choctaw Indian and a minor, was the owner of the real estate in controversy as allottee. By her guardian, said Lucinda made a lease contract with defendant Bronaugh covering the lands involved and other lands for four years from January 1, 1915, for agricultural purposes. Said lease was duly approved by the county court five days thereafter and expired January 1, 1919. Bronaugh went into possession of the premises under said lease and occupied same in person and by tenants for the full time of the lease. Said Lucinda came of age on April 26, 1917, and thereafter, on April 23, 1918, she made two lease contracts with

the plaintiff, Haddock, one for five years from that date, and the other for one year from that date covering different tracts of her allotment. No question is raised as to the validity on account of acts of Congress as to the particular lands involved. Plaintiff Haddock claims that he is entitled to the possession of the real estate involved for the year 1918 under and by virtue of said two leases made to him after the said ward attained majority, and contends that the said guardian's lease is void because the terms extended beyond the minority of said ward. Also three days after Haddock obtained his leases, and on April 26, 1918, defendant Bronaugh procured from said Lucinda two leases for himself on her lands, and claims the possession of the premises involved herein, not only under said guardianship lease, but by virtue of the two last named leases. The income from the lands in controversy for the year 1918 depends upon which one was entitled to the possession of said lands for that year. The trial court rendered judgment in favor of defendants, from which plaintiff has perfected this appeal. The main question in the case is, Can a full-blood Indian minor's guardian lease his ward's lands for agricultural purposes beyond the minority period of the ward?

1, 2. Said guardian had no power to make and said county court had no authority to approve said guardian's lease for a term beyond the minority of the ward, and therefore, said lease, as to the excess of the term thereof, after the said ward reached her majority on April 26, 1917, is void.

"Probate courts have no common-law jurisdiction, but the nature, extent, and exercise of their jurisdiction depend on the terms of the constitutional or statutory grant. They cannot exercise any powers other than those which have been expressly conferred upon them, or which are necessarily implied from those expressly conferred; and their powers are not to be extended by construction or by unnecessary implication." 15 C. J. 1011.

"The jurisdiction of the courts of probate is not inherent. 9 Enc. Pl. & Pr. 953. Such courts are purely creatures of statute, with certain limited statutory powers which must be strictly construed. Whenever they exceed the bounds of their statutory power, their acts to that extent are void." In re Bolin's Estate et al., 22 Okla. 851, 98 Pac. 934; Ozark Oil Co. v. Berryhill, 43 Okla. 523, 143 Pac. 173; Cabin Valley Mining Co. v. Hall, 53 Okla. 760, 155 Pac. 570.

"The guardian's power is limited to a lease for a term not extending beyond the period of his guardianship; unless, under statutory provisions, he may, by direction of the court, execute a lease to continue beyond the minority of his ward. Although it has been considered that a lease for a longer term is void, the more generally accepted view is that such a lease is voidable only." 28 C. J. 1138.

In Duff et al. v. Keaton et al., 33 Okla. 92, 97, 124 Pac. 291, it is announced:

"The statutes of this state are entirely lacking as to any specific provision for the procedure to be followed by the guardian in leasing the lands of his ward for agricultural or grazing or commercial purposes or for exploring for oil or gas."

Likewise, we think the statutes of this state are lacking as to any specific authority, or authority by implication, for a guardian to lease, or a county court to approve a lease of lands for agricultural purposes extending beyond the minority period of the ward.

Section 6592, Compiled Oklahoma Statutes 1921, relating to the cessation of the power of guardian, provides:

"The power of a guardian appointed by court is suspended only: * * *Second, if the appointment was made solely because of the ward's minority, by his obtaining majority."

In Jackson v. Porter et al., 87 Okla. 112, 209 Pac. 431, construing said statute, it is held in the second paragraph of the syllabus that the probate jurisdiction of the county court, after the attainment of the minor's majority, terminates, save only to require a final accounting by the guardian and to enter his discharge. See cases therein cited.

Section 6588, Id., provides that the guardian must deliver the property to the ward at the close of his guardianship in as good condition as he received it, evincing an intention on the part of the Legislature that after the power of a guardian appointed by the court is suspended by the ward attaining majority, the ward, and not the guardian, should have exclusive dominion over the property. Likewise the same intention is shown by section 6593, Id., which provides that after the ward has come to his majority he may settle accounts with his guardian and give him a release. To the same effect is section 1451, Id., which provides that the guardian has the management of the estate of his ward until the guardian is legally discharged. Section 1482, Id., after authorizing guardian to invest money in his hands, adds the following:

"And the county court may make such other orders and give such directions as are needful for the management, investment, and

disposition of the estate and effects, as circumstances require."

Said statute, and also section 1455, Id., requiring the guardian to manage the estate of his ward frugally and apply the proceeds for the maintenance of his ward, contemplate that the guardian and county court are limited in their authority to matters that may be done for the benefit of the ward while he is a minor.

In Cochran v. Teehee, 40 Okla. 388, 138 Pac. 563, it is said:

"It is fundamental, and the statutes of this state (sections 4951, 4952, Compiled Laws 1910) provided that, where a guardian is appointed solely because of his ward's minority, his power is superseded by the attainment of his ward of majority."

In Kersey, Guardian, v. McDougal, 79 Okla. 53, 191 Pac. 594, in the second paragraph of the syllabus it is held, in substance, that a guardian appointed by the court has power over the property of the ward unless otherwise ordered, and such power is suspended only by order of the court, or if the appointment was made solely because of the ward's minority, by his obtaining majority.

We therefore find that there is nothing in the letter of the Constitution and statutes of this state authorizing, or from which by implication or intendment a guardian is authorized to make, or the county court authorized to approve, a lease of lands for agricultural purposes, affecting the dominion and control of the estate of the ward after his majority.

In Bettes v. Brower, 184 Fed. 343, Eastern District of Oklahoma, Judge Campbell, construing said statutes relating to duties and powers, held that a guardian may lease his ward's lands for agricultural purposes with or without an order of the probate court, for the term not exceeding the minority of the ward.

A notable exception to the foregoing is found in section 1458, Id., authorizing guardians of infants and insane persons to lease and grant oil and gas rights in consideration of royalty, etc. Under this statute, it has been held that an oil and gas lease of a minor may be executed extending beyond the minority of the ward. Cabin Valley Mining Co. v. Hall, supra. The reasons for this exception are elaborated in the able opinion in that case. There are impelling—if not apparent—reasons why a minor's lands may be leased for oil and gas beyond the minority of the ward. The numerous cases in this jurisdiction so holding are easily distinguishable from the case at bar, because they relate to subject-matter so essentially different.

On the contrary, we think there are cogent and impelling reasons—if public policy does not require—that agricultural lands of the ward should not be permitted to be leased beyond the minority of the ward. Would such leasing beyond the period open the door to fraud? The power once granted, may not a guardian by approval of the court deprive a ward of the control of his property for such long period after he reaches his majority as to amount to a partial deprivation of the owner's right to acquire and enjoy his own? Indeed it is stoutly argued by counsel for plaintiff that such would be a violation of the Constitution of this state and of the United States, guaranteeing every person against deprivation of his property without due process of law, although we do not so hold. Whatever may be said as argumentum ab inconvenienti, we do not base thereon the holding that the guardian's lease of lands for agricultural purposes, is void as to the excess of the term thereof beyond the minority of the ward, but base such holding on the lack of authority in the Constitution and statutes thereunto.

Nor is it necessary to pass upon the question whether said guardian's lease was void ab initio, or merely voidable, at the option of the ward on attaining majority, as is held in some jurisdictions. Ross v. Gill, 4 Call (Va.) 250; VanDoren v. Everitt, 5 N. J. Law (2 Southard) 528; Jackson v. O'Rorke, 71 Neb. 418, 98 N. W. 1068; Globe Soap Co. v. Louisville & N. Ry. Co., 27 Ohio Cir. Ct. R., 759; Emerson v. Spicer, 46 N. Y. 594; Richardson v. Richardson, 49 Mo. 29. However, we may observe in passing, that if the said guardian's lease was voidable at the option of the ward on attaining majority, that said ward, Lucinda, by executing the said leases to the plaintiff, Haddock, on April 23, 1918, almost one year after she attained her majority, elected to rescind said guardian's lease. After she had executed said leases to the plaintiff, Haddock, for the year 1918 and thereby parted with the possession of the real estate in controversy for said year, she could not three days thereafter, as contended by defendant Bronaugh, execute other valid leases to him. The record does not show that defendant Bronaugh ever paid or tendered any rentals for the lands in controversy to the said Lucinda for the year 1918 under any of his leases. We think that the contention of defendant Bronaugh that the said Lucinda ratified and approved the guardian's lease or the said subsequent leases to Bronaugh by permitting the latter

to remain in possession until April, 1918, is not tenable. She could not ratify a lease or leases that were void.

3. Counsel for defendant Bronaugh further contends that this suit in the district court attacking the said guardian's lease is a collateral attack upon the order of the county court. Under the views hereinbefore expressed, this cannot be. In Jackson v. Porter et al., supra, Mr. Justice Kennamer says:

"If the proceedings are absolutely void, the appellant may maintain an ejectment in the district court for possession of the premises, and, if the appellee pleads his title by reason of the probate sale, and it appears that the contention of the appellant is true that the title is void, the appellant has the right to attack the same in such an action, for the reason that a void sale is subject to a collateral attack; but, if the sale is merely voidable, and the appellant is entitled to the recovery of the lands upon equitable grounds, the district courts of this state are vested with jurisdiction, being courts of general equitable jurisdiction, to grant the appellant such relief as he may be entitled to under the facts as they appear from the evidence." Moffer v. Jones, 67 Okla. 171, 169 Pac. 652; Welch v. Focht, 67 Okla. 275, 171 Pac. 730.

Although it is stipulated in the record that the rental value of the lands in controversy for the year 1918 is $250, we do not feel that the data in the record are sufficient otherwise for the rendition of judgment in favor of plaintiff in this court.

The cause is reversed and remanded, with directions to grant a new trial and for further proceedings in accordance herewith.

By the Court: It is so ordered.