## JENNINGS et al. v. CANADY et al.

(Circuit Court of Appeals, Eighth Circuit. June 16, 1926.)

No. 7197.

**I. Appeal and error ⬤⟿1054(3).**

Admitting evidence not competent, relevant, or material in case tried on equity side of court does not constitute reversible error, where there is sufficient competent and material evidence warranting judgment entered.

**2. Guardian and ward ⬤⟿49—Guardian could not, by contract employing attorney to bring action on contingent fee basis, bind ward beyond termination of infancy, even with approval of probate court, it not appearing that cause of action would be barred before reaching majority (Rev. Laws Okl. 1910, § 4658).**

Guardian could not bind ward beyond termination of infancy, by contract employing attorney to bring action on contingent fee basis, even with approval of probate court; it not appearing that cause of action would be barred before reaching majority, particularly in view of Rev. Laws Okl. 1910, § 4658, which tolls statutes of limitations in favor of infants.

**3. Evidence ⬤⟿29.**

Federal court will take judicial notice that under laws of Oklahoma cause of action in favor of minor would hold good till reaching maturity.

**4. Guardian and ward ⬤⟿49.**

Infant, after reaching majority, is not personally liable on contract employing attorneys, entered into by her guardian.

---

**5. Attorney and client ⊂⊃186.**

Attorney's lien, under Comp. St. Okl. 1921, § 4100, based on contract of employment with guardian, does not attach after infant's reaching majority and compromising action since the contract had ended, and the lien ceased when the contract ended.

Appeal from the District Court of the United States for the Northern District of Oklahoma; Franklin E. Kennamer, Judge.

Suit by Lonzetta Canady, by her guardian, Earl Tankersley, against the Mountain State Oil Company and another, transferred from the state court, and wherein George H. Jennings and another intervened. Plaintiff's motion to dismiss sustained, and judgment against interveners and in favor of defendants, and interveners appeal. Affirmed.

B. B. Blakeney, of Oklahoma City, Okl. (Wayne H. Lasater, George H. Jennings, and Creekmore Wallace, all of Sapulpa, Okl., on the brief), for appellants.

Don Emery, of McAlester, Okl., and John J. Davis, of Sapulpa, Okl. (J. V. Frazier, of Sapulpa, Okl., and R. H. Hudson and H. H. Booth, both of Bartlesville, Okl., on the briefs, and H. C. Farrell, of Bartlesville, Okl., of counsel), for appellees.

Before LEWIS, Circuit Judge, and FARIS and PHILLIPS, District Judges.

FARIS, District Judge. From a decree denying their lien, under the laws of the state of Oklahoma, for an attorney's fee, appellants, who had intervened in the case, appealed. The pertinent facts follow:

Lonzetta Canady, a descendant of a freedman member of the tribe of Creek Indians, and at the time of commencing the original action a minor, lacking but 97 days of her majority, owned a tract of land on which there had, some years before, been found a very valuable oil basin, and on which an oil and gas lease had some years before been made by her father, as her guardian. This lease, by mesne conveyances, had come into the hands of the Mountain State Oil Co., which is, with Lonzetta Canady, the appellee herein. Much development had been done and was still going on, and there had been taken from the infant's land approximately a quarter of a million dollars worth of oil. The royalties from this lease had been paid as they accrued to the father of the infant as her guardian, so that, at the time the matters here in controversy arose, this guardian had some $25,000 deposited in banks to the credit of the guardianship.

In this situation the father of the infant was removed as her guardian, ostensibly because he had not made his annual report and had not filed a new bond, although no opportunity was afforded him to do either. Upon the removal of the father as guardian, another guardian was appointed for the infant, who thereupon entered into a contract with appellants, employing them to bring an action for the infant against appellee Mountain State Oil Co., to cancel the oil and gas lease, and for an accounting of the oil taken from the land of the infant, as also for an accounting by the Prairie Pipe Line Company, for the reason, seemingly, that as a common carrier of oil it had transported oil which had been taken from these lands. The ground on which this action was to be bottomed, and on which it was, when begun, actually bottomed, was that rule 9, made by the Supreme Court of Oklahoma, was violated, for that the lease of the land was not sold in open court, and that all orders for the sale of the lease and the order approving it were made on the same day that the petition for the sale of the lease was filed. Under the terms of the contract for the employment of counsel, such counsel were to receive, as their compensation, a contingent fee of 50 per cent. of all sums which might be recovered.

The record presents a most unsavory situation, and inevitably leads to the conclusion that the whole plan for removing the old guardian, appointing a new guardian, and of bringing this action was largely for the purpose of exploiting the estate of this negro infant. But, be this as it may, this action was brought in a state court, by counsel so contracting, upon the ground and for the purpose stated above, and on the same day the contract of employment was made, namely, on the 21st day of July, 1923. Obviously, it is suggestive that the filing of the action followed so fast upon the heels of the contract. Thereafter the case was removed from the state court to the federal court, and no further action was taken in it till the infant came of age, on October 26, 1923. At once upon coming of age, and in consideration of the payment to her of $5,000 by appellee, Mountain State Oil Company, she affirmed the lease, and 14 days later filed a motion to dismiss the case.

Thereupon, and before any action was had on this motion to dismiss, appellants came into court and filed an intervening petition in the case, setting up their alleged lien as attorneys under the laws of Oklahoma, and praying for judgment for some $321,000 and for an accounting. Upon a trial by the court,

who heard all the evidence in the case, except such as bore upon the value of the lease, the court found the issues against the interveners and for the defendants, and thereupon sustained, as a corollary of that finding, the motion of the plaintiff to dismiss the case with prejudice. Whereupon interveners took this appeal in the conventional way.

Many alleged errors are urged as grounds for reversal. Chief among these and decisive of the case are the contentions (a) that the trial court erred in admitting evidence tending to prove fraud in the removal of the old guardian and in the appointment of a new one; (b) that the court erred in admitting evidence tending to prove that the contract of employment of appellants was void for fraud; (c) that the court erred in finding that fraud in the behalves above mentioned had been perpetrated, and that such fraud vitiated the contract of employment, and destroyed the lien, if any, on the cause of action, and precluded recovery; and (d) that the court erred in holding that the contract made by the guardian with the appellants, employing them as attorneys to prosecute this action, did not bind the infant after she reached her majority.

Obviously, the question whether it was error to admit evidence of fraud is a corollary of the two points which next follow. The latter points do not necessarily rule the correctness of the former. But if, as a matter of law and equity, fraud in the appointment of the guardian and in entering into the contract renders the contract void, then of course evidence of such fraud was competent, relevant, and admissible. Because no relief is sought against the former ward, appellants contend that the corporate defendants, against whom a judgment is sought, cannot attack the orders of the county court collaterally, and that the attack for alleged fraud is a collateral attack. Whether the legal difficulty is that the attack is collateral, or whether, being direct, for that it is in defense of the enforcement of the lien of an alleged fraudulent agreement, the defense of fraud is being urged by those who have no standing to urge it, we have found it unnecessary to rule.

Casually, it may well be doubted whether a defendant can lawfully be heard to question the manner in which an adversary obtained lawyers to prosecute an action against him. On the other hand, and upon one view, there is plausibility in the suggestion that, if a lien on the chose in action be claimed, such lien must be bottomed on the contract, and, if such contract has been fraudulently obtained, some one ought to be heard to raise the question of

that fraud. It is plain that appellee, the former infant, cannot raise this question here, because no relief is sought against her, and no judgment can be gotten against her. The moment such a judgment is sought against her she will be free to urge fraud in the making of the contract, but that does not aid us in this case. But, as forecast, whether the answer is that fraud in the matters of the procurement of counsel and in the bringing of the action cannot be urged by the corporate appellee, because such matters are none of its business or concern, and because any actual rights it may have can be fully protected in a trial of the case on the merits, we need not rule. The case in our opinion rides off on another theory.

[1] Finding it unnecessary to rule on the relevancy of the evidence offered and admitted on the question of fraud vel non, it does, of course, become necessary to rule whether the admission of such evidence was error. Regardless of whether fraud did not affect the validity of the contract, we think no error was committed by the trial court in admitting evidence tending to prove such fraud. This is so, because this case was tried on the equity side of the court, and therefore, if there be found in the record sufficient competent, relevant, and material evidence to warrant the judgment entered in the case, the fact that there was admitted evidence which was not competent, relevant, or material does not constitute reversible error. Drexler v. Commercial Bank (C. C. A.) 5 F.(2d) 13; Coles v. Denslow (C. C. A.) 270 F. 23; Hall v. United States (C. C. A.) 267 F. 795; Bodkin v. Edwards (C. C. A.) 265 F. 621; Shearer v. Farmers', etc., Co. (C. C. A.) 262 F. 861.

[2] Upon principle, and on authority of the analogous cases, we are of opinion that the guardian here could not in this case, by his contract of employment with appellants, bind the ward beyond the termination of her infancy, even with the approval of the court exercising probate jurisdiction. No case precisely in point has been called to our attention by the diligence of counsel, nor have our own rather extensive researches unearthed any, but pertinent general rules at common law, the logic of the situation, and the analogous cases seem to lead inevitably to this conclusion.

At common law, and even yet in practically all, if not all, of the states of the Union, a lease of lands made by the guardian does not bind the ward after the latter comes of age. 28 C. J. 1138; Woerner's Guardianship, 486. Likewise at common law no contract made by the guardian for the benefit of the ward or of

his estate is binding, either on the ward or on his estate, after he attains his majority. 28 C. J. 1165; 12 R. C. L. 1128. There is some authority for the view that a guardian may, by his contract, bind his ward and the latter's estate after the ward reaches his majority, if there exists a statute clearly authorizing this to be done. 28 C. J. 1167. We have no quarrel with the latter view; if it is not universally the law when such a statute exists, it ought to be the law. But the fairly recent cases of Davis v. Cone (Okl. Sup.) 244 P. 447, Haddock v. Bronaugh, 92 Okl. 197, 218 P. 848, and Yarhola v. Duling, 86 Okl. 171, 207 P. 293, rather conclusively show that there is not in the state of Oklahoma any statute which serves to make the ward liable on his guardian's contracts, or to make such contracts binding on either the ward or his estate, after the ward attains his majority. We are not unmindful that this court and the Supreme Court of Oklahoma have ruled to the contrary in cases involving leases of the ward's land for oil and gas exploitation. Mallen v. Ruth Oil Co., 231 F. 845, 146 C. C. A. 41; Cabin Valley Mining Co. v. Hall, 53 Okl. 760, 155 P. 570, L. R. A. 1916F, 493. These cases in no wise militate against the general rule above stated. That the Supreme Court of Oklahoma, however, did not consider that the Hall Case, supra, changed or broke down the rule as to ordinary leases, is conclusively shown in the subsequent case of Haddock v. Bronaugh, supra.

[3] The reason for the difference in the rule, and for holding an oil and gas lease binding on the ward after he comes of age, is too obvious to require argument or exposition. However, this reason is fully set out in the Mallen Case, supra, where the curious may read it and be informed, if its obviousness be yet recondite. But no such reason in favor of binding the ward after her majority exists in the instant case. In fact, one of appellants, testifying for himself on the trial nisi, admitted that this action would have kept good for the 97 days intervening between the day of making the contract employing appellants and that on which the ward came of age. This fact, even absent the admission of appellants, we judicially notice to be true under the law of Oklahoma. No legal reason existed for the hurry shown in the matter, or for the employment of counsel on a contingent basis, and for a fee which, if the facts and the law be as alleged, is exorbitant; for the statutes of limitations of the state of Oklahoma would not have run against the ward here, and, on the other point, she had ample cash in hand to pay any reasonable fee,

especially in a case like the main case here, which, as counsel for appellants are here strenuously contending, was so clear and simple as to fall into that category denominated in the vernacular "open and shut."

[4] Appellants, we repeat, are not seeking a judgment against the ward. Such contention of personal liability is not urged, and we think no exposition or authority is necessary to demonstrate that no such liability could possibly be urged. Yet, if the contract extended beyond the day of her majority, she became bound personally, and would yet be bound, in an action on a quantum meruit, for the value of the services rendered up to the date she compromised the cause of action. Duke v. Harper, 8 Mo. App. 296. We are, of course, referring to the situation which would have existed at common law, absent the Oklahoma statutes conferring a lien in favor of the attorney. It is doubted, however, but it is not here necessary to decide, whether these statutes at all, or to any degree, affect the common-law liability of a client who breaches his contract of employment by compromising the cause of action before judgment.

Appellants seem tacitly to concede that they could not sue the ward for their fee, or any part of it; but they insist that perforce the statutes of Oklahoma they were given a lien on the cause of action, or on the amount which plaintiff might recover therein, and that this lien continued in force and bound the corporate appellee after the ward came of age.

[5] We think this view is unsound. Conceding that a lien is created by statute (section 4100, Okl. Comp. Stats. 1921), it is clear that the lien claimed is bottomed on contract; that is to say, on the contract employing appellants. The contract with the aid of the statute creates a lien. If there were no statute, there would be no lien on the client's cause of action before judgment, since there was none at common law. 2 R. C. L. 1091 and 1076; 24 Eng. Rul. Cas. 717. Likewise, if there were no contract, there can exist no lien. The moment the contract is at an end the lien ceases; for, if the contract be breached by the attorneys—e. g., by abandonment of the case —certainly the lien would be at an end. When this case was compromised, the common-law lien had not attached, and the statutory lien had ended, because the contract had ended. The guardian no longer had power to act for the ward at the time of the settlement. On this sum of $5,000 paid to the former ward, in consideration for the compromise, appellants had no lien, because no privity ex-

isted between the former ward and appellants when this money came into her hands, or, to put it another way, when this compromise fund came into existence.

The Supreme Court of Oklahoma, in construing the local statutes of that state, which confer general powers on guardians to manage and deal (by and with the consent of the county court exercising probate jurisdiction) with the property of minors, held that these general statutes do not confer power on the guardian to make a lease of the ward's agricultural lands for a term extending beyond the ward's minority. On this question that court said in the case of Haddock v. Bronaugh, 92 Okl. 197, 218 P. loc. cit. 848, this: "Said guardian had no power to make, and said county court had no authority to approve, said guardian's lease for a term beyond the minority of the ward, and therefore said lease, as to the excess of the term thereof, after the said ward reached her majority on April 26, 1917, is void."

We have already said that, at common law, such a lease is, as to the residue thereof after minority ends, voidable by the timely dissaffirmance of the ward. But appellants contend that the statutes of Oklahoma, above referred to, have changed the common-law rule. As seen, the case of Haddock v. Bronaugh, supra, refutes this contention, by language which is unmistakable.

Neither does any local statute of Oklahoma prevent an incompetent person or an infant from dismissing his cause of action without his guardian's or next friend's consent, when such incompetent or infant becomes sui juris. Davis v. Cone, 244 P. 447. In the above case an action was begun by the next friend of an incompetent person under guardianship. Pending such action, the incompetent plaintiff was restored to competency by an order of the probate court. Thereupon the former incompetent plaintiff dismissed the suit over the protest of the next friend. The right so to dismiss being squarely in question, the Supreme Court of Oklahoma said:

"Under the ruling laid down in Yarhola v. Duling, supra [86 Okl. 171], the present action could be maintained by the next friend, under the allegations of the petition, notwithstanding the existence of the guardianship; but when the county court restored the incompetent to competency, neither the guardian nor the next friend has any further jurisdiction to prosecute the action over the objection of the former incompetent, and, beyond question, the county court had the jurisdiction and authority to inquire into the mental status of the incompetent, and, if found to be competent, to so enter its judgment."

Upon principle and the analogous cases it would seem to follow that a guardian, absent a statute, and there seems to be none, cannot make a contract employing counsel on a contingent basis, which contract, and the lien thereof, extends beyond the date at which the infant comes of age. If this is to be done, if possible exigencies should seem to require such extension, then the extension of the lien ought to be specifically given by a statute which should fully protect from undue exploitation all parties concerned.

The question as presented here is a novel one, on which directly we have found no authority. The matter is one easily remedied by statute, if the rare cases, wherein the exigencies of the situation would seem to demand such a rule, shall make such a statute expedient.

Obviously, where there is a statute, which tolls the statutes of limitations in favor of infants, as there is in Oklahoma (section 4658, R. L. of Okl. of 1910), and in most, if not all, of the states of the Union, no logical or legal necessity can ever arise for either an absolute rule or statute permitting a guardian to bind an infant and his estate beyond majority in a case like this, or at all, save perhaps in those rare cases wherein the statutes of limitations had already begun to run against the ancestor of the infant before descent cast, and tacking of disabilities is forbidden. We are constrained to conclude that the ills which might be cured by such a thorough-going rule or statute would not compensate for the ills which would inevitably flow from it, some of which this case well illustrates. If there is to be such a rule, it ought to be such, and so elastic, as to permit the courts to apply it or not, according as justice, the good of the ward, and the broad equities of the case up for judgment require, as was done in the Mallen Case and the Hall Case, both supra. The case at bar is not such a case.

If it be urged that a contract for an unconscionable fee does not harm the infant in case he compromises the action, so much may be conceded; but if the infant is, as a matter of law, absolutely bound by the contract beyond majority, then it follows that he is bound, whether he compromises or not. In other words, if the action here had proceeded to a final successful judgment for the full amount sued for, the infant would, absent fraud, have been bound to pay over more

than $150,000 out of the money received as a fee in a case which appellants insist is clear, simple, and uncomplicated.

Let the case, with costs, be affirmed.