## CLARK v. DE GRAFFENREID et al., Judges.

No. 9166—Opinion Filed July 10, 1917.

(166 Pac. 736.)

(Syllabus by the Court.)

### 1. Prohibition—Proceedings—Interest.

Where an order of a county court authorizes a guardian of a minor to purchase real estate of a third party at a price for which the latter is afterwards willing to sell, and an appeal is taken from such order to the district court, such third party, who denies the jurisdiction of such district court in such case, has a sufficient interest in such order to entitle him to file and prosecute in the Supreme Court a petition for a writ of prohibition to prevent the judges of such district court from exercising appellate jurisdiction in such case, although such third party is not contractually bound to sell at such price.

### 2. Indians—Lands—Restrictions—Guardianship—Authority of Probate Attorneys.

Under the provisions of section 6, Act Cong. May 27, 1908, c. 199, 35 Stat. 312, entitled "An act for the removal of restrictions from part of the lands of allottees of the Five Civilized Tribes, and for other purposes," the local representatives appointed by the Secretary of the Interior, with authority and duty under said act, among other things, "of prosecuting any necessary remedy, either civil or criminal, or both, to preserve the property and protect the interest of * * *

minor allottees," are authorized, as, in effect, congressionally designated "next friends" of such allottees, to prosecute an appeal in behalf of such minor allottees from the county to the district court from any appealable order obtained by the guardian of such allottees which affects their property or interests.

(a) A petition for a writ of prohibition to prevent such district court from exercising such jurisdiction in such case upon the ground of want of authority in such representatives to appeal from such order in behalf of such minor will be denied.

### 3. Prohibition—Issuance of Writ—Right.

Where a case is filed in a district court and purports to have been appealed to the same from a county court under the provisions of sections 1563 and 1564, Stats. 1890 (sections 6505 and 6506, Rev. Laws 1910), but no appeal bond has been filed therein or given as required by these sections of the statute, the district court may, in the first instance, determine the question of its jurisdiction of the case; and, where no question of the jurisdiction of such court for want of such bond has been determined therein, the Supreme Court will not issue a writ of prohibition against the judges of such district court to prevent an exercise of jurisdiction in such case, notwithstanding the petitioner for such writ is not a party to such case at the time of the denial of his petition.

Petition by A. C. Clark for writ of prohibition against R. P. de Graffenreid and another, Judges of the District Court in and for the Third Judicial District. Writ denied.

S. V. O'Hare, for plaintiff.

R. C. Allen and James C. Davis, for defendants.

THACKER, J. A. C. Clark, upon the authority of section 2, art. 9 (Williams, sec. 187) of our State Constitution, filed his petition in this court for a writ of prohibition against Judges R. P. de Graffenreid and Charles G. Watts, as judges of the district court in and for the Third judicial district, composed of Wagoner and Muskogee counties, to prevent their exercise of jurisdiction in a case now pending in the district court of Muskogee county, as a result of a writ of mandamus issued out of that court, compelling the judge of the county court of that county to transfer to the clerk of the district court a certified copy of an order in the probate matter of the guardianship of Luther Manuel, a minor allottee and freedman citizen of the Creek Nation, together with certified copies of the notice or appeal from such order and of the minutes, records, papers, and proceedings in the case, "and to do and perform all other acts and things required by law upon the part of the judge of said

court for the perfecting of an appeal from said order to said district court," upon the alleged grounds of want of jurisdiction in the district court.

Judges R. P. de Graffenreid and Charles G. Watts have filed their response to said petition; and the petition and response show that Ferdinand P. Snider, then the guardian of Luther Manuel, petitioned the county court in said probate matter for an order authorizing him to purchase for this minor 860 acres of land at $50 per acre, cash down, in accord with the proposition of the plaintiff in the instant case, as owner, to sell this land; that the judge of the county court, over the protest of William M. Harrison and Frank L. Montgomery, as United States probate attorneys for Muskogee county, and James C. Davis, as assistant Creek national attorney for the Creek Nation, who appeared in this matter for this minor, made an order authorizing and directing the guardian to purchase this land at $40 per acre, if he could, and to allow the petitioner in the instant case time to consider whether he would accept such offer; that the petitioner in the instant case, after taking time to consider the matter, was willing to sell the land upon the terms so offered; that the said William M. Harrison, Frank L. Montgomery, and James C. Davis, as such officers, acting in behalf of such minor and somewhat in the character of "next friends" by virtue of their offices, each made and filed in the county court an affidavit of the fact of his official position, in which he asserted his right to appeal under the law, and, as required by section 1563, Stat. 1890 (section 6505, Rev. Laws 1910), gave notice of an appeal from the aforesaid order to the district court upon questions of both law and fact, but, as the judge of the county court made and entered an order denying their right of appeal, and, in effect, refusing to fix the amount of their appeal bond under section 1564, Stats. 1890 (section 6506, Rev. Laws 1910), they did not make the bond provided for in this section of the statutes; that upon petition to said district court the judge of the county court was required to and did send a certified copy of the order from which these attorneys desired to appeal, together with the other minutes, records, papers, etc., above mentioned to the district court, where the case was filed, and is pending on such appeal; and that the respondents, unless prohibited by this court, will probably exercise jurisdiction in the matter of such appeal.

The only questions to be decided in this case are: (1) As to whether the petitioner, A. C. Clark, has sufficient interest to entitle him to prosecute his petition for this writ of prohibition, he now asks; (2) as to whether, if Clark has such interest, William M. Harrison, Frank L. Montgomery, and James C. Davis, or either of them, are authorized by law to prosecute the appeal in question in behalf of such minor allottee so as to give the district court jurisdiction of the same, and so that Clark is not entitled to a writ of prohibition upon the grounds of their want of such authority; and (3) as to whether, if Clark has such interest, the failure of these attorneys, under the facts and circumstances stated, to execute the bond required by sections 1563 and 1564, Stats. 1890 (sections 6505 and 6506, Rev. Laws 1910), in such cases prevents the district court from acquiring jurisdiction in the case, so as to entitle Clark to the writ of prohibition upon this ground.

As to the first of these questions, assuming but not deciding that Clark's petition in the instant case does not bind him by estoppel or otherwise to sell the land in question upon the terms proposed by the order of the county court, it appears that he has sufficient interests in the offer involved in the order of the county court to entitle him to invoke the jurisdiction of this court by the petition he has filed. In 10 Mod. Am. Law, 579, it is said:

"These writs formerly were not writs of right, but purely prerogative writs, issuable only at the pleasure of the sovereign, and therefore only in his name; and even now, in some instances, while the writs may enforce a private interest, unconnected with any public interest, the fiction of a public interest is retained, and then the proceedings begin in the name of the sovereign, upon the relation of the party aggrieved, who must show some personal interest, though the interest may be slight; and sometimes the fact that he is a citizen, and, as such, interested in the execution of the laws, is enough. If, however, the right to be enforced is private and personal, then the state must not be used as a petitioner, * * * and a petition for prohibition against a court acting without jurisdiction may be filed at the instance of any one of the parties, or even of a stranger." State v. Francis, 95 Mo. 44, 8 S. W. 1; Trainer v. Porter, 45 Mo. 336; People v. Sub. R. R. Co., 178 Ill. 594, 53 N. E. 349, 49 L. R. A. 650; People v. Crotty, 93 Ill. 180.

As to the second of these questions, it appears that the provisions of section 6 of the act of Congress of May 27, 1908, the same being found in "Annotated Acts of Congress. Five Civilized Tribes and Osage Nation," by Thomas, 264, are sufficiently comprehensive to authorize these representatives of the Secretary of the Interior, as representatives of Luther Manuel, somewhat in the character of legislatively authorized "next friends," to

prosecute the appeal in question. Section 6 of that act, so far as pertinent, reads as follows:

"That the persons and property of minor allottees of the Five Civilized Tribes shall, except as otherwise specifically provided by law, be subject to the jurisdiction of the probate courts of the state of Oklahoma. The Secretary of the Interior is hereby empowered, under rules and regulations to be prescribed by him, to appoint such local representatives within the state of Oklahoma who shall be citizens of that state or now domiciled therein as he may deem necessary to inquire into and investigate the conduct of guardians or curators having in charge the estate of such minors, and whenever such representative or representatives of the Secretary of the Interior shall be of opinion that the estate of any minor is not being properly cared for by the guardian or curator, or that the same is in any manner being dissipated or wasted or being permitted to deteriorate in value by reason of the negligence or carelessness or incompetency of the guardian or curator, said representative or representatives of the Secretary of the Interior shall have power and it shall be their duty to report said matter in full to the proper probate court and take the necessary steps to have such matter fully investigated, and go to the further extent of prosecuting any necessary remedy, either civil or criminal, or both, to preserve the property and protect the interests of said minor allottees. * * *"

This language appears to qualify the grant of jurisdiction to the probate court of this state over the persons and property of such minor allottees by these provisions which, among other things, require the recognition of these representatives of the Secretary of the Interior, as congressionally authorized "next friends" of such minor allottees, for the purpose of prosecuting such an appeal. They are authorized and required by the language quoted from that act to "go to the further extent of prosecuting any necessary remedy, either civil or criminal, or both, to preserve the property and protect the interests of said minor allottees"; and, while the regular guardians of such minors have the same functions as guardians of other minors, where, as here, in the opinion of these representatives of the Secretary of the Interior, such guardians have procured an appealable order against the property rights or interests of such minor allottees, these representatives may, as such "next friends" of such minors, appeal to the district court.

It must be obvious that such representatives of the Secretary of the Interior will be unable to effectively serve such minor allottees whenever they do not agree with their guardians and the probate courts as to the interests of such wards unless they can appeal to the district court; and there is nothing in this act of Congress above cited and quoted limiting their duties in prosecuting remedies to the wishes of the guardian or probate judge, or either of them; indeed, no occasion for such service will likely arise except in case of disagreement with the guardian and county judge as to whether there should be any such prosecution.

The subsequent provision in the act of Congress that such representatives of the Secretary of the Interior shall "advise all allottees, adult or minor, having restricted lands of all of their legal rights with reference to their restricted lands, without charge, and * * * advise them in the preparation of all leases authorized by law to be made, and at the request of any allottee having restricted land * * * shall, without charge, except the necessary court and recording fees and expenses, if any, in the name of the allottee, take such steps as may be necessary, including the bringing of any suit or suits and the prosecution and appeal thereof, to cancel and annul any deed, conveyance, mortgage, lease, contract to sell, power of attorney, or any other incumbrance of any kind or character, made or attempted to be made or executed in violation of this act or any other act of Congress, and to take all steps necessary to assist said allottees in acquiring and retaining possession of their restricted lands," does not qualify, but supplements and enlarges, the duties imposed by the preceding provisions.

Although a next friend ordinarily has no standing to prosecute an appeal where the interests of the minor are protected by a guardian (Lawless v. Reagan, 128 Mass. 592; E. B. v. E. C. B., 28 Barb. [N. Y.] 299), there are cases in which minors having guardians may appeal notwithstanding this general rule (Patterson v. Millions' Adm'x, 3 Ky. Law Rep. 538; Miller v. Cabell, 81 Ky. 178, 4 Ky. Law Rep. 962; Williams v. Cleaveland, 76 Conn. 426, 56 Atl. 850; Davidson's Appeal, 1 Root [Conn.] 275), and there is no doubt of the power of Congress to authorize, as we think it did here, such representatives to prosecute appeals in the interests of such minor allottees where the regular guardian is adverse to their conception of the same. This appeal was clearly authorized by section 1559, Stats. 1890 (section 6501, Rev. Laws 1910), which, so far as pertinent, reads as follows:

"An appeal may be taken to the district court from a judgment, decree or order of the county court; * * *

"Eighth. From any other judgment, decree or order of the county court in a probate cause, or of the judge thereof, affecting a substantial right."

An order authorizing and directing an expenditure of a ward's money in the purchase of real estate for him "affects" his substantial rights; and, for the purpose of determining whether or not they should and will prosecute the remedy of appeal, these special representatives of the minor allottee must necessarily be the judges in the first instance as to whether such substantial rights are affected adversely; and the question as to the value of the land and as to whether it was to the interest of the minor to purchase the same, which may be determined upon appeal, is not pertinent to the question of their authority to appeal in behalf of such minor allottee, or to the question of the jurisdiction of the district court over the case in any other respect.

As already shown, the county judge refused to fix the amount of the appeal bond so that these representatives of the minor allottee could give the same; and it appears that in the mandamus proceeding in the district court they did not attempt to have the writ of mandamus include a direction to the county judge to fix such bond, and, if the same was then given, to send a certified copy of the same with the other papers, etc., to the district court. The question as to whether it was necessary for these attorneys to give such a bond in behalf of the minor allottee, even if they had to resort to a petition for a writ of mandamus to compel the county judge to fix the amount, in order to give the district court jurisdiction, is perhaps the most serious and difficult one presented in this case. But, since the district court may, in the first instance, determine its own jurisdiction in this respect, and any party against whom the same is determined may appeal therefrom to this court, a majority of the members of this court are of the opinion, and the court holds, that the petitioner, although not at this time a party to the case in that court, has an adequate remedy at law, and that his petition for a writ of prohibition, in so far as it rests upon want of an appeal bond, should be denied because of such remedy. The petition is therefore denied by the court for the reasons stated; but, in view of the facts already stated above, Mr. Justice BRETT and the writer of this opinion think that this question should be here determined, and, although we agree in the conclusion of the court, our own views in this regard are as follows:

Such an appeal bond, although qualifiedly essential to the jurisdiction of the district court, is not absolutely so.

If such a bond was absolutely essential, it would be easy to see how cases might arise in which a party entitled to appeal would be absolutely without a remedy, unless possibly by suit in equity, as, for instance, where he did not discover sufficient reason for appeal, or the judge should, for one reason or another, defer fixing the bond until the last day for an appeal, and then change his mind as to his duty in this regard, and finally refuse to do so at all, so that it would be too late to compel him to do so by mandamus proceedings.

If such a bond was absolutely essential, all the proceedings had in a district court in a case appealed without such bond would be void, unless they could be upheld as an agreed case, although the case had progressed to final judgment in that court without the question having been raised and without fault on the part of the appellant. If such a bond was absolutely essential, the hazard and the burden of an appeal would often be inexcusably great where the appellant, as in this case, was prevented from giving bond through no fault of his own.

The law should be, and as we (Mr. Justice BRETT and the writer of this opinion) think is, more in accord with reason and natural justice, as well as with the obvious purpose of the statutes.

The adverse party is undoubtedly entitled to have the case dismissed for want of such bond unless the appellant shows himself entitled to give the same at the time the question is raised; and the district judge, upon consideration of the public policy to discourage frivolous and vexatious litigation, may, no doubt, properly dismiss such appeal upon his own motion when he discovers the absence of such bond, unless it is shown that the appellant is at that time entitled to be afforded the opportunity to give the same and does so.

The third paragraph of the syllabus in the case of Vowell v. Taylor et al., 8 Okla. 625, 58 Pac. 944, where the Kansas cases therein cited were followed, reads as follows:

"It is the duty of the district court to dismiss an appeal from a justice's court when no appeal bond has been given. The court has no power to permit the filing of a new bond except in cases where a defective or insufficient bond has been given."

But the facts in that case and the preceding paragraph of the syllabus, as well as some of the Kansas cases cited, show that the above-quoted paragraph is not to be taken as establishing the rule that such bond is absolutely essential to jurisdiction.

The second paragraph of the syllabus to which we have referred reads as follows:

"Where a case is tried in the probate court, and judgment rendered for the plaintiff, and the defendant attempts to appeal, without giving an appeal bond, and, after the transcript of the proceedings in the probate court is filed in the district court, the plaintiff makes a timely motion to dismiss the appeal for the reason that no appeal bond was given to effectuate the appeal, and such motion is overruled, and the parties are required to go to trial, any appearance for the purpose of protecting his rights on the trial will not amount to a waiver of the giving of an appeal bond, or give the court the right to try and determine such cause."

And in 2 R. C. L., Appeal and Error, sec. 93, p. 117, it is said:

"In some jurisdictions the view is taken that the giving of the statutory appeal bond is jurisdictional, and therefore cannot be waived by the appellee, in the absence of statutory authorization, as the provisions of law requiring a bond on appeal are not solely for the benefit of the appellee, but are based partly upon considerations of public policy, to discourage frivolous and vexatious litigation. The prevailing view, however, is that an appellee may waive the giving of an appeal bond, and the statutes in some instances expressly so provide. The appellee, by delay in objecting to defects in the bond, may be deemed to have waived them, and where the appellee is permitted to waive the giving of the appeal bond, his attorney may waive it on his behalf."

In 3 Corpus Juris, Appeal and Error, sec. 129, p. 1162, it is said:

"In some states it is held that where the statute provides that the amount of the bond or undertaking must be fixed by the court or clerk the exercise of the power conferred is essential, and that in its absence the appellant cannot proceed, but his appeal will be dismissed. Other courts take the view that the statute imposes the duty upon the judge, and therefore that the appellant should not be prejudiced by the failure of the judge to do his duty, and that the defect is one which may be cured by amendment. Where the judge refuses to fix the amount of the bond, or fixes it at an unreasonable figure, mandamus will lie to compel him to act properly, or an appeal can be taken from the dismissal of a motion to dismiss the appeal for insufficiency or lack of a bond."

Mandamus proceeding, when available, is often too expensive in such matters as are appealed to the district court; and there appears to be no good reason why the district court should not make such order upon motion in a proper case.

"The validity of an appeal and jurisdiction of the appellate court are to be determined, as a rule, by that court" (3. Corpus Juris, Appeal and Error, sec. 128, p. 371); and it appears to us that a court of the equity powers of the district court, if not of an appellate court without any equity power, must have under our statutes, in such a case as this, the inherent power to protect its own jurisdiction, when attacked in a case pending therein, by directing the court from which the appeal is taken to do, in respect to an appeal bond, what is essential on its part to such jurisdiction, even though the time for doing so provided by statute has expired, where the appellant, as here, is not at fault. See Hudson v. Parker, 156 U. S. 277, 15 Sup. Ct. 450, 39 L. Ed. 424.

We, Mr. Justice BRETT and the writer of this opinion, express no opinion as to what action should be taken in the district court in the instant case. We think it is an open question, however, under the facts before us as to whether the district court should, if the question of jurisdiction for want of an appeal bond arises therein, upon a proper showing and request, make an appropriate order to the county court, affording the appellants an opportunity to make such bond in the county court and have it transmitted to the district court to be filed as a paper in the case, if the district court should not permit the same to be made and filed by the maker directly in that court.

If this be regarded as a departure from precedent, it may be answered that it is one that should be made, just as hundreds of others have been made, to declare the law what reason demands and make it subserve the purpose for which it exists with the minimum of cost, inconvenience, and injury; and, to be more specific, it is no more of a departure than the rule allowing amendments of defective appeal bonds must have appeared when the original precedent for the same was first written in an opinion.