On January 3, 1915, Jennie Hickory departed this life, leaving surviving her a husband, Thomas Hickory, and three minor children, to wit, Louina, Sallie, and Sammie; all parties being full-blood Creek Indians. J.C.W. Bland was by the county court of Tulsa county appointed guardian of the persons and estates of these Indian minors and filed his petition for the sale of that portion of their deceased mother's allotment." commonly known as the "surplus allotment." The county court entered its decree authorizing a sale of the said land, whereupon a sale was had, and one J.O. Campbell bid the sum of $26,000 therefor. The county court denied confirmation to him, whereupon the bidder, J.O. Campbell, appealed to the district court, and upon hearing in that court the sale was confirmed, from which judgment the local representative of the Interior Department, in this case the probate attorney, lodged an appeal in this court.
The guardian and J.O. Campbell, the bidder, moved this court to dismiss the appeal for the reason: First, that the appeal is taken by the probate attorney as next friend without the aid or consent of the guardian; and, second, that no supersedeas bond was given, filed, or approved as by law required. The probate attorney contends that the cause should be reversed for the reasons: First, that the amount of the bid is disproportionate to the value of the land; and, second, that the district court erred in not hearing evidence as to whether or not it was to the best interest of the estate the land be sold.
As to the first proposition raised by defendants in error in the motion to dismiss, alleging that the probate attorney is without legal authority to take this appeal, the guardian not having done so or consented thereto, Clark v. De Graffenreid, 64 Oklahoma, 166 P. 736, holds that the probate attorney has legal authority to take an appeal from a judgment affecting the rights of minor allottees. The power thus conferred is superior and greater than the power conferred on a guardian, and, where there is a conflict, the power of the probate attorney must prevail, and he cannot be deprived of this power by any act of the guardian. The guardian cannot deprive him of any power upon him conferred by Congress. We therefore find the appeal has been legally taken to this court.
As to the second proposition, that the case should be dismissed for the reason that no appeal bond was given by the probate attorney as next friend of the minors, from the district court to this court: It appears that this proposition was raised in the last-cited case, and that the matter was not fully determined therein. Waiving the question whether or not as a matter of right an appeal can be taken from the district court to this court without giving bond, we shall discuss the question whether or not a probate attorney can appeal from a judgment affecting the person or property interest of minor allottees of the Five Civilized Tribes without giving an appeal bond. The powers and duties of the probate attorney or local representative of the Interior Department is set forth in section 6 of an act of Congress approved May 27, 1908, c. 199, 35 Stat. at L. 312, which is as follows:
"That the persons and property of minor allottees of the Five Civilized Tribes shall, except As otherwise * * * provided by law, be subject to the jurisdiction of the probate courts of the state of Oklahoma. The Secretary of the Interior is hereby empowered, under rules and regulations to be prescribed by him, to appoint such local representatives within the state of Oklahoma who shall be citizens of that state or now domiciled therein as he may deem necessary to inquire into and investigate the conduct of guardians or curators having in charge the estates of such minors, and whenever such representative or representatives of the Secretary of the Interior shall be of opinion that the estate of any minor is not being properly cared for by the guardian or curator, or that the same is in any manner being dissipated or wasted or being permitted to deteriorate in value by reason of the negligence or carelessness or incompetency of the guardian or curator, said representative or representatives of the Secretary of the Interior shall have power and it shall be their duty to report said matter in full to the proper probate court and take the necessary steps to have such matter fully investigated, and go to the further extent of prosecuting any necessary remedy, either civil or criminal, or both, to preserve the property and protect the interests of said minor allottees. * * *"
Jurisdiction of the state courts over the person and property of minor allottees must come from a grant of Congress, otherwise they have no jurisdiction.
In the same breath subjecting the property of the minor allottees to courts of the state, Congress provided for the appointment of representatives, now officially known as probate attorneys, and defined their duties and powers. Courts in accepting the jurisdiction must also recognize the duties and powers of the probate attorney. Congress, in conferring power upon probate attorneys to *Page 82 
prosecute any necessary remedy to preserve and protect the interest of minor allottees, meant to, and did, grant full and complete power, which necessarily means the right of an appeal. The grant of an authority to appeal having been conferred by Congress, consequently an appeal bond by the probate attorney cannot be required as a condition precedent to an appeal, for the reason the act of Congress does not require it. The probate attorney must follow the necessary legal procedure, but the right of an appeal cannot be denied him by any condition precedent not required by Congress.
Full and complete powers to preserve and protect estates of minor allottees necessarily means that all legal issues by the probate attorney raised must be determined and passed upon both in the trial and appellate courts before any judgment shall become effective affecting the interest of any minor allottee for whom it is his duty to represent.
As to the first proposition raised by the probate attorney in which his contention is that the value of the land was disproportionate to the amount of the bid therefor: The evidence offered at the hearing in the district court on behalf of the plaintiffs in error consisted of four witnesses who testified that the value was from $30,000 to $36,000. It was stated that some representative of the Interior Department had fixed the value at $36,000. This appraiser did not appear in person and testify; it was merely a statement made by the probate attorney. The guardian testified that the land was worth $24,000; the three appraisers appointed by the court fixed its value at $26,000. The value of land is largely a matter of judgment, in which witnesses may honestly differ. This was the highest bid, and no one else raised the bid on the day of confirmation. We do not believe the judgment of the court in which it found that the value of the land was not disproportionate to the amount of the bid should be disturbed.
In the hearing of the matter before the district court, the probate attorney sought to prove the Value of the land on the day of confirmation. Objections were made thereto and sustained by the court for the reason that the evidence should be as to its value on the day of sale. We believe the holding of the court is correct and such holding is upheld in Re Estate of Leonis, 138 Cal. 194, 71 P. 171.
Now as to the second proposition raised by the probate attorney in the district court, the court heard evidence as to whether or not the value of the land sold was disproportionate to the amount of the bid, but refused to hear evidence as to whether it was for the best interest of the estate of the minors that the lands be sold, and it was this refusal to hear evidence that the probate attorney complains of. In order to determine whether or not this was error, it will be required to determine what issues were before the county court and what issues were appealed to the district court. This will necessitate a statement as to what the petition for sale and decree denying confirmation each contain.
In the petition it is stated that the minors own and possess certain personal property, approximately $10,000 each, invested in promissory notes secured by a first mortgage on real estate; that the annual income of each minor and charge against each is approximately $1,000; that Louina owns an allotment of land; that the minors are the sole owners of their, deceased mother's allotment, each owning an undivided one-third; and that Sallie and Sammie have the use and occupancy of the homestead allotment of their mother until April 26, 1931, they having been born since March 6, 1916. The father, Thomas Hickory, is treated by the parties as having no interest in the land, and this opinion will so treat him as having no interest therein. The petition further states that the lands involved bring an annual rental of $334, and it is to the best interest of the estate of the minors that it be sold and the proceeds thereof put out at interest or invested in some productive stock or government bonds or loaned out on the best obtainable terms as the court may direct.
The probate attorney and Thomas Hickory, father of the minors, recommended a sale of the property, stating that it was to the best interest of the minors that it be sold. A decree was entered by the county court authorizing a sale for the reason and for the purposes as stated in the petition. The lands in question are situated near the city of Tulsa and very nearly touch one of the additions of that city. When offered for sale, J.O. Campbell, one of the defendants in error, was the purchaser, bidding therefor the sum of $26,000.
When the return of sale came on for confirmation in the county court, the probate attorney appeared and contested confirmation of sale for the reason that the bid was disproportionate to the value of the land and for the further reason that it was not for the best interest of the minors that the land be sold. A letter from Louina, the oldest of the minors to her father, objecting to a sale of the land, was called to the attention of the court. The county court found that the sale was legally and fairly conducted, and that the sum bid was not disproportionate to the value *Page 83 
of the property sold, and that no sum exceeding such bid could be obtained; that the guardian in all things proceeded and properly managed such sale as by law and the order of the court required, further reciting the appearance of and protest of the probate attorney and the letter of Louina objecting to the sale. After listening to the argument of counsel, the court entered an order denying confirmation.
It is clearly to be seen that there were two issues before the court: The issue whether or not the value of the land sold was disproportionate to the amount bid; and, second, whether or not it was to the best interest of the minors that the land be sold. It would have been a better procedure to have separated the two issues. The court would be authorized to hear both, if there be no jurisdictional objections.
Now as to the matter of confirmation of sale, the court in the decree found that all matters required by law and the order of the court to be done had been performed, so if there were no other legal objections it was the duty of the court as a matter of law to confirm the sale and order that a deed issue, and the denial of the confirmation would have been an arbitrary judgment. The decree is silent as to the reason confirmation was denied. But was the matter of confirmation the only issue before the court? There was the probate attorney objecting for the reasons stated. The guardian, who does not appear related to his wards, likely a stranger to them, was asking that the sale of the lands be approved, when on the other hand his ward was protesting against the sale of the heritage of her deceased mother; so we must either believe that the court acted arbitrarily in denying confirmation, or that he became convinced upon the other issues presented, to wit, that it was not for the best interest of the minors that the lands be sold. The contents of the letter written by the minor are not shown in the evidence, as we have here only the evidence in the district court and not the evidence of the county court; but, in view of the fact that the minor appeared in the district court when the matter came on for hearing there and testified, so it may not be amiss here to set forth her evidence in the district court on the presumption that the same reason was given in the county court. The minor testifed as follows in the district court:
"My name is Louina Hickory. I am a sister of Sallie and Sammie Hickory. We are the heirs of Jennie Hickory, deceased. We are the minors, whose lands are attempting to be sold by the guardian at this time. Sallie and I are attending the convent school at Purcell, Okla. Sammie is staying with Mrs. Sallie Morrison, near Broken Arrow. I am 15 years of age. I have been attending school at Purcell for the last four years, Sallie, Sammie, and I inherited this land from my mother, Jennie Hickory. I would like to hold the land. I don't want the land sold. I am the oldest one of the minors who owns this land. I talked with my mother in regard to this land before she died."
In the district court the plaintiff in error further attempted to prove that it was the dying request of the full-blood Indian mother that the lands be held for her children; but objections were made to the introduction of this evidence, which were sustained by the court.
If the county court still retained jurisdiction to rehear and set aside the decree of sale previously entered, then not to hear this full-blood Indian child, who likely knew nothing of the decree of sale, protest against the sale by her guardian of the heritage left her by her mother, would have been an abuse of discretion, and, if the full-blood Indian mother made a dying request that her lands be held for her minor children, two of whom had no lands, this evidence in good conscience should have been heard.
Theoretically speaking, a minor has no capacity at all to judge what is best for him or his estate; but, properly speaking, when the minor is of an age approaching majority as in this case, she may suggest facts and views of policy worthy of consideration by the court, and such facts, if worthy, should be given great weight by the court in exercising its discretion. We are therefore under the belief that the county court did hear both issues, and, owing to the silence in the decree as to why the confirmation was denied, it must have been that the court deemed it was not to the best interest of the minors that these lands be sold. If this was the reason why the county court denied confirmation, then the next question for consideration is whether or not it still retained jurisdiction to again hear the question whether or not it was to the best interest of the minors that these lands be sold, and set aside the order previously entered decreeing a sale. The law appears to be settled in this state that a county court has full control and jurisdiction of all probate matters during the minority of a minor to modify or vacate an order or judgment by it made. In the case of Twin State Oil Co. v. Johnson, 72 Oklahoma, 179 P. 605, rendered in this court on March 18, 1919, it is stated:
"County courts in this state have full control and jurisdiction of all probate matters, and may at any time prior to the majority *Page 84 
of a minor whose estate is involved in any proceeding in said courts, upon proper notice and for sufficient legal grounds, modify or vacate any order or judgment made by said court in said proceeding."
The court has further spoken to the same effect in Barnett v. Blackstone et al., 60 Okla. 41, 158 P. 588, so as a matter of law, prior to the passing of title in a guardianship sale, the court still retained its jurisdiction and, upon proper notice and for good reasons shown, could set aside the order authorizing a sale of a minor's land. We therefore find that both issues presented in the county court on the day of confirmation could have properly been heard by the court and were heard, and that the appeal from the county court to the district court was upon both issues.
A probate sale of a minor's land when the proceeds are merely intended as an investment is one friendly to the minor, and when it is made to appear to the court prior to the passing of title that it is not to the best interest that the lands be sold, then it is the duty of the court, upon proper notice, to hear the matter, and, if the best interest of minors require it, to set aside the order previously given authorizing the sale. A bidder's right prior to passing of title to him is secondary to the minor's interest; his rights have not become so great as to take away the discretion of the court to act for the best interest of the minors.
Defendants in error rely upon Estate of Thomas Spriggs,20 Cal. 121, in support of their contention that the decree of sale became final after the expiration of time for an appeal. The same is held in Estate of Leanis, 138 Cal. 194,71 P. 171. We do not believe the law of California is applicable to the case at bar for the reason that the judgments of probate courts there, if no appeal is taken, become final at the expiration of the term, whereas the law of this state, as above stated, is that, until the minor becomes of age, all judgments and orders sleep in the bosom of the, court and may be modified, vacated, or set aside during such time upon proper notice and for good cause shown.
In Re Billy et al., 34 Okla. 120, 124 P. 608, Commissioner Sharp, speaking for the court, says:
"Standing in loco parentis, the court should be ever vigilant and watchful in behalf of these wards. * * * The true object of the courts in exercising this vast and responsible jurisdiction should be the best interest of the minor, without regard to other considerations."
The watchfulness and vigilance of courts should be quickened when dealing with the estates of full-blood Indian minors, whose parents and relatives likely do not speak a word of English, and their timidity to appear in courts is well known, and their experience in the affairs of life has been limited.
We are of the opinion that the district court erred in refusing to hear evidence as to whether or not it was to the best interest of the minors that the lands be sold. This issue should have been heard and passed upon before any order of confirmation was heard or made.
It is the judgment of this court that the decree of the district court, confirming the sale, be and the same is hereby set aside and that court is directed to proceed in accordance with this opinion.
OWEN, C. J., and SHARP, PITCHFORD and McNEILL. JJ., concur.