## McKINNEY et al. v. BLUFORD.

No. 9954—Opinion Filed March 15, 1921.

Rehearing Denied April 26, 1921.

(Syllabus.)

**1. Deeds — Definition — Delivery — Intention.**

A deed is defined to be a written instrument containing a contract, or agreement, which has been delivered by the party to be bound and accepted by the grantee, and in order to constitute a delivery, it must appear that the grantor intended it to pass title at the time.

**2. Same—Deed by Full-Blood Indian.**

Mahale, a full-blood Creek Indian, executed a will devising her allotment to Fickey, also a full-blood Creek Indian, who was in no way related to the testatrix, either as heir or otherwise. Fickey executed a deed to the land so devised to McKinney; the deed was left with the grantee. At the execution of the deed, a date was set to appear before the proper county judge and have the deed approved, the consideration to be paid in the presence of the county judge upon approval of the deed. On the date so set, Fiskey appeared at the office of the county judge; the grantee failed to appear. The deed was placed of record by the grantee. No part of the consideration was ever paid or tendered. Held, the possession of the deed by the grantee, under the circumstances stated, was not such a delivery as is contemplated by law.

Error from District Court, Seminole County; Geo. C. Crump, Assigned Judge.

Action by Fickey Bluford, or Fickey, Creek Roll No. 8782, against W. E. McKinney and another to cancel deed, etc. Judgment for plaintiff, and defendants bring error. Affirmed.

James H. Cobb and E. L. Harris, for plaintiffs in error.

Pryor & Stokes, for defendant in error.

PITCHFORD, J. This is an appeal from the district court of Seminole county. The land in controversy was allotted to Mahale, a full-blood citizen of the Creek Nation, who died devising said land to one Fikey Bluford, better known as Fickey, also a full-blood Indian citizen of the Creek Nation, the said Fickey not being an heir of the said Mahale. On November 13, 1912, Fickey executed a deed to plaintiff in error, W. E. McKinney, who entered upon and occupied the land continuously from that time up to the institution of this action. Plaintiff in error Christofer occupied the land at the commencement of the action as the tenant of McKinney.

On November 17, 1916, the defendant in error, as plaintiff, filed an action against the plaintiffs in error in the district court of Seminole county for the possession of said land and for rents arising therefrom, and for the cancellation of said deed, alleging as grounds for the cancellation that the deed had never been approved; that the same had never been offered for approval; that, the plaintiff being a full-blood Indian, the deed was therefore void and of no effect; that the deed was void for the further reason that the same was executed without any consideration. The plaintiffs in error filed an answer in the nature of a general denial.

On November 22, 1917, the cause went to trial before the court, without a jury, resulting in a judgment against plaintiffs in error for the sum of $400 as rents for the years 1914, 1915, 1916, and 1917, and for the possession of said land and for the cancellation of said deed. Plaintiffs in error prosecute their appeal to this court. Hereafter, for convenience, the parties will be referred to as they appeared in the trial court.

While the plaintiff in his petition sought cancellation of the deed for the reason, among others, that the same had not been approved by the county judge having jurisdiction of the settlement of the estate of Mahale, the testatrix, that position has been abandoned, and the only ground now urged for cancellation is that the deed was executed without any consideration passing from the defendant to the plaintiff.

The contention of the defendants is that mere failure of consideration, whether partial or total in character, when unmingled with fraud or mala fides, is not sufficient in equity to obtain the rescission of the deed especially where the deed contains a recital that the deed was made for a valuable consideration; contending that such recital operated as an estoppel against the plaintiff.

The further contention is made that where payment of the purchase price is deferred to a date subsequent to the execution of the deed, nonpayment thereof is no ground for setting aside the instrument.

The evidence in the record discloses that the plaintiff is a full-blood Creek Indian, about 45 years of age; that he executed the deed to W. E. McKinney and Nathan Williams; that the deed expressed a consideration of $500, no part of which was paid at the time the deed was executed, and no part thereof had ever been paid or tendered prior to the trial. It was the understanding between the parties, at the time the deed was executed, at least so understood by the plaintiff, that the deed would have to be approved by the county court before it would be of any validity. The grantee set the date for the plaintiff to appear before the county judge, when the deed would be approved and the money paid over. The defendant McKinney informed the plaintiff, at that time, that when the money was paid over, the judge would see the money. On the day set to go before the county judge, the plaintiff appeared, but the grantees failed to appear; whereupon the plaintiff returned home.

The annual rental value of the property was $150. Soon after the deed had been executed, Williams quitclaimed his interest in the land to McKinney for $40. So far as disclosed by the proof, the plaintiff has never demanded any of the rents; has never questioned the right of McKinney to occupy the premises; has never made any demand on McKinney for the $500, the consideration expressed in the deed; and has never taken any steps toward collecting same. On the other hand, we find that McKinney has been in possession of the land all these years, collecting the rent and the profits, and at no time has offered to pay the consideration.

It is not contended that it was necessary for the county judge to approve the deed, since Fickey was not an heir of Mahale. He took the land by devise. The same law applies to him ordinarily as would apply to any other citizen of Oklahoma. He was absolutely free of any restrictions, in so far as the land in controversy was concerned. While all of this is true, we must take into consideration the fact that he was a full-blood Indian, and anyone in the least acquainted with the Indian character, especially the full-blood, knows that it is extremely rare to find one who has the least knowledge of the legal force and effect of legal instruments. But this fact alone would not justify the cancellation of the deed in the absence of fraud.

At the time the deed was executed, it was evident that the grantor understood that the same would have to be approved by the county judge before becoming effective. The grantees either thought the same, or they intentionally led Fickey to believe that it was necessary to have the approval of the county judge before the money could be paid.

By act of Congress, in all cases where a full-blood Indian heir seeks to alienate inherited tribal lands, in order to give the deed any validity, it is necessary to have the approval of the county judge. In the instant case, the proof clearly establishes that the parties understand the same course would be taken in respect to this deed. The fact that McKinney was allowed to retain the deed under the circumstances was not such a delivery as is contemplated by the law. Hundreds of deeds, as we know as a matter of common knowledge, have been executed by full-blood Indian heirs and left with the grantee, all parties knowing that the deed would not be of any effect until approved by the county judge, and date would be set, as was done in the instant case, to appear before the county court to have the deed approved, at which time the consideration would be paid over to the grantor in the presence of the county judge, at which time delivery would be completed, and this was exactly what was understood would be done by Fickey. Whether or not a deed has been delivered, is a question of fact to be determined in each case by its particular circumstances.

When McKinney was allowed to retain the deed, it was upon the condition, either expressed or implied, that on the date set for approval by the county judge the parties concerned would appear, the deed would be approved, and the consideration paid.

In Couch v. Addy et al., 35 Okla. 355, 129 Pac. 709, the rule is stated as follows:

"To constitute a valid deed, not only must there have been an intention on the part of the grantors to deliver, but the grantee must accept the same in person, or by some one whom he has authorized to accept for him, or whose conduct he subsequently ratified."

To the same effect, see McCuan et al. v. Gordon et al., 44 Okla. 254, 144 Pac. 348; Taylor v. Harkins et al., 74 Oklahoma, 178 Pac. 117, 8 R. C. L. 976-8-9.

In Kenney v. Parks et al., 137 Cal. 527, 70 Pac. 556, it is said:

"Where a wife executed two deeds to her husband, and on his representation that they would not have any validity until recorded, and on his promise that he would not have them recorded unless he survived her, placed them in his possession, there was no delivery of the deeds, as there was no intent that they should become operative as such."

When McKinney filed his answer, he did not acknowledge, at the time, that he owed the plaintiff any portion of the consideration. He filed a general denial, forcing the plaintiff to prove all the allegations of his petition. After all the evidence was in, then for the first time does McKinney show any disposition to treat this full-blood Indian with any degree of fairness. He then tenders the consideration. He knew all these years that he owed this amount. He no doubt knew the Indian's character, and, under the circumstances, good faith would have dictated that he should show some disposition toward fairness.

As we have said, delivery being a question of fact, and the trial court having passed on the evidence and found in favor of the plaintiff, and ordered the cancellation of the deed, the judgment of the trial court should not be reversed unless we find same to be against the clear weight of the evidence.

We have examined the evidence as a whole, and conclude that the judgment of the trial court is in harmony with the principles of justice and right dealing, and the same is in all respects affirmed.

HARRISON, C. J., and McNEILL, ELTING, and NICHOLSON, JJ., concur.