## YARHOLA v. DULING, County Judge, et al.

No. 12636—Opinion Filed May 16, 1922.

(Syllabus.) ·

1. **Indians — Estates of Incompetents — Powers of Probate Attorneys.**

Section 6 of the act of Congress approved May 27, 1908, 35 St. L. 312, defines the duties and powers of the local representative, now officially known as probate attorney, but grants him no power or authority in his official capacity to represent full-blood adult Indians of the Five Civilized Tribes, although incompetent, in court proceedings when their unrestricted lands or funds are involved.

2. **Indians — Wills — Devise of Restricted Funds by Full-Blood—Effect.**

A devise of restricted funds by will, made by a full-blood member of the Five Civilized Tribes pursuant to the act of Congress, operates as a removal of restrictions on said funds, and the devisee takes said funds free from restrictions.

3. **Indians—Guardian and Ward—Right of Ward to Appeal by Next Friend.**

The general rule is that a next friend has no standing to prosecute an appeal where the interests of the incompetent are protected by guardian. This general rule is, however, subject to certain exceptions, and there are cases where the incompetent may appeal by next friend notwithstanding the general rule. Held, under the facts as stated in the opinion, the general rule does not apply.

4. **Prohibition—Office of Writ — Control of Inferior Court.**

Prohibition is the proper remedy where an inferior court is attempting to make an excessive and unauthorized application of judicial force in a case otherwise properly cognizable by it.

5. **Same—Relief from Order Requiring Excessive Supersedeas Bond.**

The action of the county court fixing the supersedeas bond of an incompetent at $65,000 when the incompetent desired to appeal by his next friend from an order of said court authorizing the guardian of the incompetent to loan $50,000 worth of Liberty Bonds upon a note secured by real estate mortgage, is excessive, and when it has the force and effect of depriving the incompetent of an appeal, the same constitutes an unwarranted application of judicial force in a case otherwise properly cognizable by

said court and prohibition will lie to restrain said inferior from enforcing said order.

Original Action for Writ of Prohibition.

Action by Cussehta Yarhola, an incompetent, by Dudley Buell, probate attorney and next friend, against S. A. Duling, County Judge of Okfuskee County, and others for writ of prohibition. Writ granted.

Dudley Buell, for plaintiff.

Sid White and R. S. Cate, for defendants.

McNEILL, J. This is an original action commenced in this court by Cussehta Yarhola, an incompetent, by Dudley Buell, probate attorney and next friend, against S. A. Duling, county judge for Okfuskee county, and H. A. Dolen and H. G. House, joint guardians of Cussehta Yarhola. The petition alleges that the plaintiff is a full-blood Creek Indian, whose restrictions have not been removed, and was declared an incompetent by the county court of Okfuskee county in 1918, and H. A. Dolen and H. G. House are regularly appointed guardians. It is alleged the plaintiff has a large estate amounting to approximately $190,000, a portion of which came to him by will; that $160,000 of said estate consists of United States Liberty Bonds. The petition alleges that certain parties filed an application with the county court of Okfuskee county seeking an order to permit the guardians to loan $50,000 worth of Liberty Bonds to the applicants, and that applicants be permitted to secure said loan by note and mortgage upon certain real estate. That said application was set for hearing and the plaintiff, although an incompetent, filed objection to the making of said loan for the reason he considered the Liberty Bonds a safe investment. At the hearing the court announced he would make an order permitting the guardian to make the loan of said bonds and to take as security therefor applicants' note and mortgage bearing interest at the rate of seven per cent. That the probate attorney appeared for the incompetent, in his official capacity, and also as next friend of said incompetent, and gave notice of appeal. The judge advised the plaintiffs in this action, if they desired to appeal from the order permitting the loan, he would fix the supersedeas bond in the sum of $15,000, and if they desired a stay of said proceedings and to prevent the loan of said bonds, it would require an additional bond in the sum of $50,000, or a bond in the total sum of $65,000.

The petition alleges there was another application made for a loan of the same amount of bonds, and the court made the same order and fixed the supersedeas bond in that proceeding in the sum of $65,000.

It is next alleged that the bond is excessive and the plaintiff is an incompetent, and under guardian, and it is impossible to perfect such a bond, and that the fixing of the supersedeas bond in said amount constitutes an unwarranted and arbitrary use of judicial power upon behalf of the court, and that prohibition is the proper remedy to prevent such unauthorized application of such judicial force. This court, upon the filing of the petition herein and proper showing why the cause was commenced in this court, issued an alternative writ of prohibition against the county judge and the guardians. The defendants filed an answer and response to the alternative writ. This answer raises certain questions of fact, and also questions the right and authority of the probate attorney, in his official capacity, to appeal from the order of the county court or to represent the incompetent in this proceeding, for the reason that the funds to be loaned came to the plaintiff by will and are unrestricted, and the same being unrestricted, the probate attorney, in his official capacity, has no authority to represent the incompetent in a transaction where his unrestricted funds are involved. The answer admitted that the court made the order authorizing the loaning of said funds and the court fixed the bond in the sums heretofore stated. The plaintiff admits the funds were acquired by him by will executed by a restricted Indian, in compliance with the acts of Congress.

We will first consider the question of whether the probate attorney, in his official capacity, has any power or authority to appear for the incompetent in this court, or had any such authority to appear in the county court, in his official capacity, for the reason the funds attempted to be loaned were unrestricted, it being contended that neither the United States nor its agents have any supervisory control over said funds. Section 6 of the act of May 27, 1908 ( 32 Stat. 312), in referring to the jurisdiction of the probate court and empowering the Secretary of the Interior to appoint local representatives, commonly known as probate attorneys, to advise and appear for members of the tribes, said:

"And such representatives of the Secretary of Interior are further authorized, and it is made their duty, to counsel and advise all allottees, adult or minor, having restricted lands of all their legal rights with reference to their restricted lands without

charge, * * * and at the request of any allottee having restricted land he shall prosecute an appeal thereof to cancel and annul any deed, conveyance mortgage or lease, * * * or any other incumbrance of any kind or character made or attempted to be made or executed in violation of this act or any act of Congress and to take all steps necessary to assist said allottee in acquiring and obtaining possession of their restricted lands."

The different appropriation acts appropriating money for the payment of probate attorneys must all be construed in connection with the above act, and the above act refers only to the restricted lands and funds of adults. Yarhola being an adult, although an incompetent, the Secretary of the Interior and his representatives have supervisory control only over the restricted lands or restricted funds. See Barlow v. Soldofsky, 84 Okla. 153, 202 Pac. 1009; McKinney v. Bluford, 81 Okla. 166, 197 Pac. 430; Cochran v. Techee, 40 Okla. 392, 138 Pac. 565; Armstrong v. Phillips, 82 Okla. 182, 198 Pac. 499.

The next question for consideration is whether the funds sought to be loaned, being acquired by Yarhola by will, are unrestricted. The Supreme Court of the United States, in the case of LaMotte v. U. S., 254 U. S. 570, 65 L. Ed. 410, held, in substance, that the devise of restricted land by will approved according to the act of Congress operates as a conveyance of the land free of restrictions. By applying the same principle to restricted funds that were devised by will, executed in accordance with an act of Congress, the devisee would take the same free of restrictions. See, also, McKinney v. Bluford, supra, and Barlow v. Soldofsky, supra. We think the position of the defendants is well taken and the probate attorney, in his official capacity, has no authority to appear in this case, nor did he have such right or authority to appear in the county court in his official capacity, for the reason the funds were unrestricted and not under the supervision or control of any agency of the United States.

It is next contended that the incompetent could not appeal from the order of the county court by his next friend nor prosecute this action by his next friend, because said proceedings must be taken by his guardian. In support of this contention, the defendants cite the case of Clark v. De Graffenreid, 64 Okla. 177, 166 Pac. 736. We cannot agree that this case supports that contention. On page 738 the court states as follows:

"Although a next friend ordinarily has no standing to prosecute an appeal where the interests of the minor are prosecuted by a guardian (Lawless v. Reagan, 128 Mass. 592; E. B. v. E. C. B., 28 Barb. [N. Y.] 299), there are cases in which minors having guardians may appeal notwithstanding this general rule (Patterson v. Millions, Adm'x, 3 Ky. Law Rep. 538; Miller v. Cabell, 81 Ky. 178, 4 Ky. Law Rep. 962; Williams v. Cleaveland, 76 Conn. 426, 56 Atl. 850; Davidson's Appeal, 1 Root [Conn.] 275)."

In the case of Williams v. Cleaveland (Conn.) 56 Atl. 850, supra, the court has a very elaborate discussion of this question, and in the body of the opinion states as follows:

"When a general guardian has been appointed by a court of probate, he is usually the proper person to represent the infant plaintiff in such action. But there are frequently cases when the infant may properly sue by next friend, notwithstanding the existence of such guardian, as when the guardian is absent, or is unwilling or unable to institute or prosecute the required action or appeal; and especially when, though declining to take such action himself, he does not forbid such proceeding, or when he is disqualified by interest hostile to that of the infant, or is for other reasons an improper or unsuitable person to prosecute such actions in behalf of the ward. In such cases, and in the absence of any statute requiring infants to sue by probate guardian, there seems to be no good reason why actions and appeals may not at least be commenced by an infant by next friend."

A long line of cases is cited to support this proposition.

In the instant case Yarhola is an incompetent, and had been so adjudged by the county court, and guardians were appointed to represent him. The guardians failed to appeal, and in fact refused to appeal. Yarhola himself desired to appeal from the order of the county court, and gave as his reasons that the Liberty Bonds were a safe investment and the return derived therefrom was sufficient to support him. This court, in the case of In re Hickory's Guardianship, 75 Okla. 79, 182 Pac. 233, in the fifth paragraph of the syllabus stated as follows:

"Theoretically speaking, a minor has no capacity at all to judge what is best for him or his estate; but, practically speaking, when a minor is of an age approaching majority and has had the benefits of an education, he may suggest facts and views of policy worthy of consideration by a court in the exercise of its discretion, and, if worthy of consideration, should be given great weight."

We can see no reason why this should not apply to a full-blood Indian, although incompetent to manage his own estate; when he has sufficient intellect to advance the idea above stated, it should be worthy of consideration for the court, and be given great weight. The court would not be bound to follow his suggestions, but if he desired to appeal through a next friend when his guardian refuses, he should be given that opportunity, without being required to give a bond that has the force and effect of denying him an appeal. We do not mean to say that in every instance he may appeal, but in a case where the questions involved are of so much importance as the one in the case at bar, and the power and authority of the court to make the orders made are doubtful, that right should not be denied him.

The only question now necessary to consider is whether the acts of the county court amounted to an unauthorized application of judicial force in a case otherwise cognizable by it, and the writ of prohibition should be made permanent to prevent such unauthorized application of judicial force. It is apparent that the fixing of the supersedeas bond in the sum of $65,000 to be given by an incompetent when attempting to appeal by his next friend from this kind and character of an order is so excessive that it amounts to denying to him the right of appeal. There is no damage that could be suffered by virtue of the appeal, and in a case where the jurisdiction or the authority of the court is questionable, the bond should be simply a nominal bond to cover the costs. No one could suffer, unless it would be the incompetent. The only difference would be the difference in the amount of interest that would be derived for the benefit of the estate of the incompetent, and in doing this it must also be considered there is some hazard in taking the note and mortgage. The same also necessitates a greater expense, and whether the actual income of the incompetent would be greater may be a question that is not free from doubt.

The appeal bond in the instant case should not have exceeded the sum of $500, and when the court fixed the same at such an excessive amount, it has the force and effect of denying an appeal, and constitutes an unwarranted and arbitrary use of judicial force such that a court will enjoin by prohibition. Such was the holding of this court in the case of Martin v. O'Reilly, 81 Okla. 261, 200 Pac. 687, where the court stated in the third paragraph of the syllabus as follows:

"The action of a county court sitting in probate in appointing a guardian for an alleged incompetent without notice, and without the alleged incompetent being present, and without a full and fair hearing upon the petition, and setting an appeal bond in the sum of $7,500 upon notice by the alleged incompetent of her intention to appeal from said order appointing a guardian, constitutes an unwarranted and arbitrary use of judicial power, and prohibition is the proper remedy to prevent such unauthorized application of such judicial force."

Whether the appeal could be perfected at this time by the trial court reducing the bond would likewise be a question that is not free from doubt. The question involved regarding the loaning of the Liberty Bonds is a new question in this jurisdiction, and as far as we know has never been passed upon by any court, and before this court passes upon the same, the matter should be properly presented and briefed in a proper case appealed in the regular manner. Whether the county court has power and authority to make an order authorizing the guardian to loan Liberty Bonds and to take therefor security, is a question that is not free from doubt and upon which this court will express no opinion.

It is ordered that the alternative writ be made permanent, and the county judge and the guardians be prohibited from proceeding further with the orders, heretofore made, on the above applications.

PITCHFORD, V. C. J., and JOHNSON, MILLER, KENNAMER, and NICHOLSON, JJ., concur.